29 C.C.P.A.(Patents)

### NORMANN et al. v. SCHMIDT et al.

#### Patent Appeal No. 4556.

Court of Customs and Patent Appeals.
Feb. 2, 1942.

Watson, Cole, Grindle & Watson, of Washington, D. C. (Francis G. Cole, of Washington, D. C., and Nelson Littell, of New York City, of counsel), for appellants.

Harold T. Stowell, of Washington, D. C. (Hutz & Joslin, of New York City, of counsel), for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner of Interferences awarding priority of invention to appellee with respect to the four counts of the interference. Count 1 is illustrative and reads as follows: "1. The process of preparing alcohols comprising subjecting a higher aliphatic carboxylic acid having more than five carbon atoms to a high temperature and pressure adapted to reduce acids to alcohols in the presence of hydrogen and a hydrogenating catalyst until reduction of the acid to alcohol has taken place."

For the purposes of this appeal the involved invention is sufficiently described in the quoted count.

The interference originally involved three parties—appellants, appellee, and one Walther Schrauth. Inasmuch as Schrauth did not appeal from the decision of the board adverse to him he is not a party to this appeal. The title of the cause as returned to this court erroneously included the name of Schrauth as appellee; he of course is in no way involved in this appeal and the title of the case is changed to conform to this fact.

Appellants' application was filed on July 13, 1931, serial No. 550,616, and the application of appellee was filed on April 1, 1931, serial No. 527,060.

The interference was originally declared on May 28, 1936, between appellants and appellee upon a singe count, which is count 1 of the instant interference.

During the motion period appellants moved to dissolve the interference, alleging inter alia that appellee was barred from receiving a patent on the invention by rea-

son of the issuance to appellee of a patent for the same invention in a foreign country, upon an application filed more than 12 months prior to the filing of his instant application.

Appellants being the junior party, they also moved to shift the burden of proof because of reliance by them upon a German application for the same invention filed by them on July 18, 1930. It further appears that appellants moved to add another count to the interference. Appellee, in response to said motion, filed a certified copy of a German application, No. 12 o 3I 317.30, filed by him in Germany on April 7, 1930, disclosing and claiming the here involved invention. Appellee also moved to add 6 counts to the interference.

The Primary Examiner denied appellants' motion to dissolve, the motion to shift the burden of proof, and the motion to add a count to the interference, and the motion of appellee to add counts was granted as to three of them and denied as to the others. The three counts thus added are counts 2, 3, and 4 of the instant interference.

It appears that in their motion to dissolve the interference upon the ground that the claim corresponding to the count was not patentable to appellee, appellants relied principally upon a British patent to appellee's legal representatives, No. 356,731, issued on September 1, 1931, which discloses and claims the subject matter here in issue. It appears that two provisional applications were filed in connection with said patent, one bearing the date of March 1, 1930, and the other the date of June 25, 1930.

The first of said applications does not disclose the involved invention, but only the production of alcohols from the *esters* of carboxylic acids. The second of said applications discloses the invention here involved, viz., the production of alcohols from carboxylic acids.

The patent issued upon said provisional applications contains claims embracing the production of alcohols from both carboxylic acids and from their esters.

Appellants petitioned the Commissioner of Patents, in the exercise of his supervisory authority, to instruct the examiner to revise his decision and hold that said English patent constitutes a statutory bar against appellee receiving a patent upon his instant application, and further to revise the examiner's decision and hold that

appellee's instant application was not filed within 12 months of the earliest filed application upon which the British patent was issued, and therefore that appellee must be confined to his domestic filing date for reduction to practice in this country, and that the examiner should be directed to shift the burden of proof and make appellants the senior party. This petition was denied by the commissioner.

Thereafter, on October 25, 1937, the interference was redeclared, Schrauth being made a third party thereto, with the three added counts proposed by appellee.

After the redeclaration of the interference appellants renewed their motion to shift the burden of proof, basing such renewal upon the fact that on February 3, 1938, a German patent was published which was issued upon an application of a representative of appellee filed November 20, 1925, which patent, appellants alleged, disclosed the reduction of carboxylic acids to alcohols in accordance with the counts of the interference, and that, as appellants are entitled to the date of their German application, July 18, 1930, it should be held that appellants are the senior party, more than 12 months having elapsed between appellee's first filed foreign application and the filing date of his instant application.

Inasmuch as the filing date of the application of the third party Schrauth antedated the filing dates of the applications of appellants and appellee, he Schrauth became the senior party, and appellee moved to shift the burden of proof as between himself and Schrauth to make appellee the senior party by virtue of the filing date of the German application filed by his representative on April 7, 1930, and by virtue of the filing date of his British provisional specification of June 25, 1930.

The Primary Examiner denied appellants' motion to shift the burden of proof and granted that of appellee.

Thereafter the Examiner of Interferences entered judgment on the record against the junior parties, appellants and Schrauth, and awarded priority of invention to appellee, the senior party.

Appellants appealed from this decision to the Board of Appeals, alleging in their assignments of error, inter alia, a statutory bar against appellee receiving a patent upon his application.

The Board of Appeals dismissed the grounds of appeal relating to patentability

of the counts to appellee, and set the appeal for hearing only on the question of priority of invention.

With respect to priority of invention the board affirmed the decision of the Examiner of Interferences awarding priority of invention to appellee with respect to all of the counts, holding that appellee's first application in a foreign country for the involved invention was filed on April 7, 1930, and that, his instant application having been filed in this country within 12 months from said April 7, 1930, appellee is entitled under the provisions of R.S. § 4887, 35 U.S. C.A. § 32, to said last named date for conception and reduction to practice of the invention, and that, as said date is earlier than any date to which appellants are entitled, appellee is entitled to an award of priority.

From such decision appellants have taken this appeal.

R.S. § 4887 reads as follows:

Sec. 4887. [U.S.C., title 35, § 32, 35 U.S.C.A. § 32] "No person otherwise entitled thereto shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid by reason of its having been first patented or caused to be patented by the inventor or his legal representatives or assigns in a foreign country, unless the application for said foreign patent was filed more than twelve months, in cases within the provisions of section forty-eight hundred and eighty-six of the Revised Statutes [31 of this title], and six months in cases of designs, prior to the filing of the application in this country, in which case no patent shall be granted in this country.

"*An application for patent for an invention or discovery or for a design filed in this country by any person who has previously regularly filed an application for a patent for the same invention, discovery, or design in a foreign country which, by treaty, convention, or law, affords similar privileges to citizens of the United States shall have the same force and effect as the same application would have if filed in this country on the date on which the application for patent for the same invention, discovery, or design was first filed in such foreign country: Provided, That the application in this country is filed within twelve months in cases within the provisions of section forty-eight hundred and eighty-six of the Revised Statutes [31 of this title], and within six months in cases*

*of designs, from the earliest date on which any such foreign application was filed.* But no patent shall be granted on an application for patent for an invention or discovery or a design which had been patented or described in a printed publication in this or any foreign country more than one year before the date of the actual filing of the application in this country, or which had been in public use or on sale in this country for more than one year prior to such filing." (Italics ours.)

Certain of appellants' reasons of appeal allege error by the Board of Appeals in not holding that a statutory bar exists against appellee's receiving a patent for the invention in this country.

That such a question may not be considered by us upon an appeal from an award of priority in an interference proceeding is well established. Phelan v. Green, 71 F.2d 298, 21 C.C.P.A., Patents, 1228; Hendrickson et al. v. Ronning et al., 76 F.2d 137, 22 C.C.P.A., Patents, 1040. Therefore, these reasons of appeal will not be discussed by us.

In the foregoing quotation of R.S. § 4887 we have italicized the only portion thereof which may be considered in the determination of priority of invention in an interference proceeding. The first paragraph of said section clearly relates to the *granting* of patents, and the same is true of the last sentence of the second paragraph. Of course, whether or not a patent shall be granted to a party cannot be determined in an interference proceeding. The only question to be determined is that of priority of invention and questions ancillary thereto. A party may be the first inventor of the subject matter of an interference and yet not be entitled to a patent for the same. That is wholly a matter for ex parte consideration by the Patent Office tribunals.

Upon the question of priority of invention in the case at bar, it appears that all the parties concerned are citizens of Germany; that appellants are entitled to the date of their German application, July 18, 1930, for conception and constructive reduction to practice of the invention here involved; and the principal question to be determined is the date on which appellee first made application in a foreign country for a patent for the involved invention.

It will be observed from the foregoing statement of facts that appellee had filed

both German and British applications for the invention. We will first consider his German application.

It appears that on November 20, 1925, he filed an application disclosing and claiming a process for the making of higher molecular alcohols through treatment of *esters* of higher molecular carboxylic acids.

On April 7, 1930, he filed an application for the involved invention. This application is termed in the application an "addition" to his application of November 20, 1925.

It appears that separate patents were issued upon said applications, the first being numbered 573,604, covering the treatment of esters of higher molecular carboxylic acids for the making of alcohols, and the second patent, numbered 626,290, for the involved invention of treating carboxylic acids directly for the making of alcohols.

It is appellants' contention that the invention here involved was disclosed in appellee's application of November 20, 1925, and hence that is the date of his first application for the involved invention; which, if true, would relegate appellee to the date of his application in this country for conception and constructive reduction to practice of the invention, in view of the provisions of R.S. § 4887.

This contention is based upon a statement in appellee's German patent No. 573,-604, which reads as follows: "* * * In similar manner polyvalent alcohols can be obtained from other di- or tricarboxylic acids and the like and their oxy compounds."

The paragraph from which the above statement is quoted reads as follows: "If we subject the esters of polybasic higher molecular carboxylic acids to hydrogenation with highly active catalysts then usually at first a carboxyl group will be reduced. The reduction may be carried still farther if the reaction is longer or more energetic. For example it is possible to convert adipinic acid ethyl ester via the corresponding oxycarboxylic acid esters into hexandiol which can be hydrogenated further to hexanol. As intermediate products are formed perhaps hexane carboxylic acid ester or hexylaldehyde. In similar manner polyvalent alcohols can be obtained from other di- or tricarboxylic acids and the like and their oxy compounds."

It will be observed from the above quotation that an example is given of the conversion of adipinic acid ethyl ester, and then follows the statement that in similar manner polyvalent alcohols can be obtained from other di- or tricarboxylic acids. We are in agreement with the Primary Examiner and the Board of Appeals that the language relied upon by appellants does not disclose the involved invention, but relates only to the treatment of esters of other acids. There would be no occasion for the use of the word "other" in the statement that alcohols can be obtained from "other di- or tricarboxylic acids" if appellee contemplated the direct reduction of alcohols from such acids. Clearly the "similar manner" means the treatment of the esters of such acids, which is not the invention before us.

The Patent Office tribunals in passing upon this question apparently assumed that appellee's patent No. 573,604 conformed to the original specification of the application upon which the patent was issued, and the same assumption was made by the parties in their briefs and upon oral argument before us. However, since the submission of the case to us, appellants have made a motion to correct a diminution of the record, and on certiorari what purports to be appellee's original German application of November 20, 1925, and an amendment made thereto and incorporated therein on April 3, 1930, have been certified to us by the Commissioner of Patents.

The amendment certified to us has no relevancy to the issue before us. It purports to add another example to the application, numbered "Example 5." This example appears in substantially the same form as Example 3 of the patent No. 573,-604.

However, the phraseology of the patent above discussed is different from the phraseology upon the same subject in the application as originally filed, but in our opinion there is no difference in meaning.

The corresponding paragraph in the original application reads as follows:

"By subjecting the esters of polybasic carboxylic acids to the hydrogenation with highly active catalysts, generally a carboxyl group is first reduced. However, the reduction may be carried still farther by a longer or more energetic reaction. For example it is possible to convert the oxalic acid ester, by way of the glycollic acid ester, finally completely into ethyl alcohol and glycol, which latter may still further be converted in circumstances into

ethyl alcohol. In the hydrogenation of the glycollic acid esters, acetic ester and acetaldehyde may also be obtained as intermediate products. Thus the present process offers the possibility of converting the cheap oxalic acid into ethyl alcohol in an excellent yield; by a suitable choice of the experimental conditions, the reaction can be kept at most various intermediate stages. In a similar manner may polyvalent alcohols be obtained from other di- or tri-carboxylic acids etc. and their hydroxy compounds."

It will be observed from the above quotation that the treatment of esters only is contemplated. By way of example the oxalic acid ester is treated to produce ethyl alcohol. Following this it is stated, as is stated in the patent, that in a similar manner polyvalent alcohols may be obtained from *other* di- or tri-carboxylic acids and their hydroxy compounds. There would be no occasion for the use of the word "other" if this language should be regarded as disclosing a treatment of acids instead of their esters, as the involved invention contemplates.

■ Appellants point out the fact that in appellee's oath to his application here in interference he cited his application of November 20, 1925, as embracing the subject matter of the invention here involved.

While this is true we do not think appellee is concluded by that fact. His application here involved states that it is a continuation in part of a domestic application filed by him on March 6, 1930, serial No. 433,840, and while said last-named application is not in the record, appellee's oath above referred to states that said application No. 433,840 and his instant application have certain common subject matter, although nowhere is it claimed that said application No. 433,840 discloses the invention here involved. In view of the fact that appellee's citation of his German application of November 20, 1925, in his oath in his instant application may have been due to the common subject matter of his domestic applications, there is no warrant for attaching to such citation of the German patent of November 20, 1925, the significance contended for by appellants.

In any event, appellee's German application of April 7, 1930, termed "Addition to" his application of November 20, 1925, clearly implies that the treatment of carboxylic acids to produce alcohols is a discovery not disclosed in his application of November 20, 1925.

For the reasons stated, we are of the opinion that the invention here involved was not disclosed in appellee's November 20, 1925, German application.

■ In their briefs before us both parties undertake to state the German law with respect to "Patents of Addition," but there is nothing in the record before us to indicate what the German law is upon that subject. It is elementary that courts may not take judicial notice of the provisions of foreign laws.

■ Inasmuch as it appears that separate patents were issued upon appellee's German applications of November 20, 1925, and April 7, 1930, we must assume that the applications involved separate inventions, and as appellee's application of April 7, 1930, was the first German application to disclose the involved invention, we must hold that appellee is entitled to the date of April 7, 1930, as the date of his first application in a foreign country unless his patent application in England for the involved invention was, as a matter of law, of an earlier date.

As hereinbefore stated, appellee first filed a provisional specification in England on March 1, 1930, which specification did not disclose the invention here involved, but disclosed the reduction of esters only; on June 25, 1930, he filed a second provisional specification which did disclose the involved invention. Later both provisional specifications were combined in one complete specification and a patent was issued covering the reduction of polycarboxylic acids and their derivatives, which would include the esters of such acids.

There is found in the record what purports to be the British statute relating to the granting of patents upon provisional specifications. Both of the parties hereto apparently have accepted the provisions set forth in the record as correct and we therefore shall do likewise. Section 16 of that statute, which is entitled "Patents and Designs Act, 1907," relates to cases where two or more provisional specifications for inventions have been filed. Subdivision (2) of said section reads as follows: "(2) Such patent shall bear the date of the earliest of such applications, but in considering the validity of the same, and in determining other questions under this Act, the court or the comptroller, as the case may be, shall have

regard to the respective dates of the provisional specifications relating to the several matters claimed in the. complete specification."

Inasmuch as appellee's first provisional specification did not disclose the invention here involved, it cannot be truly said that it was for the "same invention" as that disclosed and claimed in his domestic application here involved. Appellee's second provisional specification did disclose the invention and should be regarded as his first regularly filed application for a patent in Great Britain for the invention here claimed by him. That the British patent bears the date of the first provisional specification is immaterial, especially in view of the provision of subdivision (2) of section 16, supra.

It would be most extraordinary if a party should be considered to have filed an application for a specific invention in a foreign country on the date of filing an application which did not disclose that invention, and it is inconceivable that Congress so intended.

Appellants rely upon four cases in support of their contention that appellee's provisional specification of March 1, 1930, should be regarded as the earliest date on which he filed a foreign application for the invention here involved. These cases are Ex parte Smith, 1898 C.D. 276; In re Swinburne, 19 App.D.C. 565, 1902 C.D. 537; In re Bastian, 44 App.D.C. 425, 1916 C.D. 160, and Manuscript Decision of the Board of Appeals, Appeal No. 13,305, of March 20, 1935.

We have examined the cases cited. The case of Ex parte Smith, supra, merely held that the date of a British provisional specification *disclosing an invention* should be regarded under R.S. § 4887 as the date of the application rather than the date of the completed specification.

To the same effect is the case of In re Swinburne, supra.

Therefore neither of these cases has any relevancy to the question before us.

The case of In re Bastian, supra, does sustain appellants' contention in that the provisional specification there involved did not disclose the invention patented, and described in the completed specification; but nevertheless the court held that the date of the patentee's provisional specification ·should be regarded as the date of his

application for the patent issued upon the completed specification.

In so far as the last-cited case is concerned, we are not in agreement therewith. Cases to the contrary are American Stainless Steel Co. v. Rustless Iron Corporation, D.C., 2 F.Supp. 742; Handley Page, Ltd., v. Leech Aircraft, Inc., D.C., 35 F.Supp. 856; and Woburn Degreasing Co. v. Spencer Kellogg & Sons, D.C., 40 F.Supp. 357.

The cited manuscript decision of the Board of Appeals of March 20, 1935, follows the ruling in the case of In re Bastian, supra.

As hereinbefore indicated, we are in accord with the holding of the Patent Office tribunals that the date of appellee's first British provisional specification, viz., March 1, 1930, should not be regarded as the date of appellee's British application for the involved invention for the reason that said provisional specification did not disclose it, and that the date of his second provisional specification, filed June 25, 1930, which did disclose the invention, should be regarded as the date of his British application in so far as the invention here involved is concerned.

Section 4887, R.S., supra, provides that a domestic application for a patent filed by any person who has "previously regularly filed an application for a patent for the same invention * * * in a foreign country which, by treaty, convention, or law, affords similar privileges to citizens of the United States shall have the same force and effect as the same application would have if filed in this country on the date on which the application for patent for the same invention * * * was *first* filed in such foreign country," provided that the domestic application is filed within 12 months from the earliest date on which any such foreign application was filed. (Italics ours.)

From the foregoing it is clear that it is the first application in a foreign country disclosing the invention, if filed not more than 12 months prior to the date of filing his domestic application, which an applicant is entitled to rely upon for conception and reduction to practice of the invention involved.

As hereinbefore stated, we find, as did the Patent Office tribunals, that appellee is entitled to the date of April 7, 1930, as the date of his first application for a patent for the involved invention in Germany, and the date of June 25, 1930, as the date of

his first application for a British patent for the involved invention.

Inasmuch as appellee's first application in a foreign country for the involved invention was his German application of April 7, 1930, and as he filed his application in this country within 12 months from such date, he is entitled, as held by the Patent Office tribunals, to the date of April 7, 1930, for conception and constructive reduction to practice of the involved invention. Inasmuch as this date is concededly prior to any date to which appellants are entitled, it follows that appellee is entitled to an award of priority with respect to all of the counts in issue.

Upon the suggestion of appellee of a diminution of the record, on certiorari certain additional parts of the record relating to the exercise of supervisory authority of the Commissioner of Patents, hereinbefore referred to, were certified to the court by the Patent Office. Our order provided that the costs incident thereto should be subsequently taxed by us. Upon inspection of these papers so certified, we find that they are properly a part of the record in view of appellants' contention with respect to a statutory bar against appellee's receiving a patent, and appellee's position with respect thereto. While we have not found it necessary to do more than merely refer to these papers in our discussion, it would have been necessary for us to consider them had we given to certain provisions of section 4887, R.S., supra, the construction contended for by appellants. Therefore, the costs of printing said additions to the record will be taxed against appellants.

For the reasons herein stated, the decision of the Board of Appeals is affirmed.

Affirmed.