**Application of NORMANN et al.**

**Patent Appeal No. 5016.**

Court of Customs and Patent Appeals.

July 3, 1945.

Hammond & Littell, of New York City (Francis G. Cole, of Washington, D. C., and Nelson Littell and Charles P. Pollard, both of New York City, of counsel), for appellants.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 1, 2, 7, 14 to 17, inclusive, 20, 25, and 27) in appellants' application for a patent for an alleged invention relating to the production of higher aliphatic alcohols.

Claims 1, 2, 17, 20, and 27 are sufficiently illustrative of the appealed claims. They read:

"1. The process of preparing alcohols comprising reducing a fresh higher aliphatic carboxylic acid having more than five carbon atoms by subjecting the same to hydrogenation.

"2. The process of preparing alcohols comprising hydrogenating a freshly prepared higher aliphatic carboxylic acid having more than five carbon atoms at such elevated temperature and pressure as will produce substantially only alcohols."

"17. The process comprising subjecting a substantially pure aliphatic carboxylic acid having more than five carbon atoms at a high temperature and a high pressure capable of reducing carboxylic groups in the presence of hydrogen and a hydrogenating catalyst thereby producing a higher aliphatic alcohol."

"20. The process comprising subjecting a fresh coconut oil fatty acid to a temperature of about 310°C. to 325°C. at a pressure of about 260 atmospheres in the presence of a copper catalyst and of hydrogen."

"27. The process of preparing alcohols which comprises subjecting a fresh higher aliphatic carboxylic acid containing between 8 and 18 carbon atoms to a high temperature and pressure adapted to reduce acids to alcohols in the presence of hydrogen and a catalyst essentially comprising metallic copper until reduction of the acid to alcohol has taken place."

The appealed claims were rejected by the tribunals of the Patent Office as being unpatentable over the counts in issue in an interference (No. 72,838) between appellants and one Schmidt—Normann et al v. Schmidt et al., 125 F.2d 162, 29 C.C.P.A., Patents, 822—in which appellants were the losing parties.

The counts of the interference related to the production of higher aliphatic alcohols. Of the counts there involved, Nos. 2 and 4 are sufficiently illustrative. They read:

"Count 2. The process of preparing alcohols which comprises subjecting a higher aliphatic carboxylic acid containing at least 8 carbon atoms to a high temperature and pressure adapted to reduce acids to alcohols in the presence of hydrogen and a catalyst essentially comprising metallic copper until reduction of the acid to alcohol has taken place."

"Count 4. The process of preparing alcohols which comprises subjecting a higher aliphatic carboxylic acid containing between 8 and 18 carbon atoms to a high temperature and pressure adapted to reduce acids to alcohols in the presence of hydrogen and a catalyst essentially comprising metallic copper until reduction of the acid to alcohol has taken place."

It will be observed that the claims here on appeal are limited to a process of preparing alcohols by hydrogenating "fresh higher aliphatic carboxylic acid having more than five carbon atoms" (as stated in claim 1), "hydrogenating a freshly pre-pared higher aliphatic carboxylic acid" (as stated in claim 2), hydrogenating a "substantially pure aliphatic carboxylic acid" (as stated in claim 17), hydrogenating "fresh coconut oil fatty acid" by subjecting it "to a temperature of about 310°C. to 325°C. at a pressure of about 260 atmospheres" (as stated in claim 20), and hydrogenating "fresh higher aliphatic carboxylic acid containing between 8 and 18 carbon atoms" (as stated in claim 27), whereas, counts 2 and 4 of the interference are somewhat broader in that they are not limited to fresh or freshly prepared higher aliphatic carboxylic acids, nor are any of the counts of the interference limited to hydrogenation at any specific temperature or pressure, as called for by appealed claim 20. (Italics supplied.) Appealed claim 7 also contains limitations as to temperature and pressure.

It appears from the record that the Primary Examiner was originally of opinion that only such claims in appellants' application as called for hydrogenation of fresh or freshly prepared carboxylic acid were patentable, and that broader claims which correspond to the counts of the interference were not patentable.

The Board of Appeals was of opinion, however, that the broader claims in appellants' application were patentable and, in so holding, stated, inter alia:

"After careful consideration of the record it appears to us that applicants do not state that treatment of impure acids would be technically wholly inoperative but that it is rather a matter of degree or practicable commercial practice because of the impurities rendering the catalytic agent ineffective after a time. We consider that it appears from applicants' specification that there is no highly critical line of demarcation between treating pure acids and acids having a small percentage of impurities and that no sharp line of demarcation as to temperatures and pressures apply."

Thereafter, the interference, involving only the broader claims, was declared by the Primary Examiner.

The principal issue to be decided here is whether the use of fresh acid in the claimed process involves invention over the counts of the interference, which counts, as hereinbefore noted, call for the use of acid broadly.

There is no evidence of record which would support a holding that the claimed

process is inoperative if the acid used is not fresh. On the contrary, in their remarks accompanying an amendment presenting claims which did not specify that the acid was pure or fresh, counsel for appellants stated, among other things:

"As a matter of fact the applicants have carried out the process of the present invention using aged acids and have produced a small percentage of alcohols by such procedure, but the yield is not sufficient to make the process commercially successful. * * * When aged products are present, the quantity of conversion is greatly reduced but the applicants' claims, by authority of a number of decisions, should not be limited to the best or the most satisfactory conditions by which his process may be operated."

Although Schmidt, the successful party in the interference, did not specifically suggest in his application the desirability of using *fresh acid,* counsel for appellants did not contend, in the interference proceeding, that Schmidt's disclosure was inoperative.

▆▆ Under the related circumstances, we are unable to concur in the views urged upon us by counsel for appellants that the Patent Office tribunals erred in holding that the distinction between claims reciting the use of acid broadly and claims reciting the use of fresh or pure acid is one of degree only.

It may be, as contended by counsel for appellants, that the use of aged acid is not commercially practicable. However, it does not follow that the use of fresh acid rather than aged acid involves a difference in kind rather than in degree so far as the results obtained are concerned. Although commercial success may be persuasive in doubtful cases, it is well settled that where it is evident that claims do not define patentable subject matter commercial success is immaterial. See In re Earl Ackenbach, 45 F.2d 437, 18 C.C.P.A., Patents, 769; In re Day, 118 F.2d 352, 28 C.C.P.A., Patents, 1002; In re Jannell, 120 F.2d 1012, 28 C.C.P.A., Patents, 1262.

▆▆ The counts in issue in the interference proceeding were not limited to the use of aged acid or acid containing undesirable aged products in the production of higher aliphatic alcohols, and, as the party Schmidt was held to be the prior inventor of the use of acid broadly, we are of opinion that appellants' discovery that the use of acid which is fresh, or freshly prepared, or substantially pure produces better results than the use of acid which is not strictly fresh, or not freshly prepared, or not substantially pure does not involve invention.

Counsel for appellants stress the fact that the examiner originally allowed claims limited to the use of *fresh* acid, and argue that the use of such acid is the essential feature of the invention. It should be noted, however, that, after the Board of Appeals held on appellants' first appeal that there was "no highly critical line of demarcation" between the results obtained by the use of pure acids and acids having a small percentage of impurities and after the decision in the interference proceeding, the Primary Examiner held, and properly so we think, that the limitations in the appealed claims as to "freshness" or "purity" of the acid did not lend patentability to such claims over the counts in the interference.

▆ Appealed claim 20, which is representative of claim 7, specifies particular conditions of temperature and pressure. There is nothing of record to show that those conditions are in any way critical. On the contrary, in support of the amendment hereinbefore referred to, counsel for appellants stated, among other things, that—

"The applicants did not insert any broad ranges of temperature and pressure originally for the following reasons: Having given a specific example, it is within the ability of any chemist skilled in hydrogenation reactions to understand the invention and also to determine the operable ranges of temperature and pressure."

We are of opinion, therefore, that the limitations as to conditions of temperature and pressure in appealed claims 7 and 20 do not lend patentability to those claims.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.