264 F.Supp. 734 (1967)
In re NATTA et al., Movant.
In the U. S. Patent Office Before the Examiner of Interferences, Interference No. 89,634.
HOGAN et al.
v.
ZLETZ
v.
BAXTER et al.
v.
NATTA et al.
Misc. No. 35.
United States District Court D. Delaware.
March 1, 1967.
*735 Edmund D. Lyons, of Morris, James, Hitchens & Williams, Wilmington, Del., and Mary Helen Sears, of Irons, Birch, Swindler & McKie, Washington, D. C., for Natta et al.
David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Louis F. Reed, of Fish, Richardson & Neave, New York City, and Roger A. Hines, Legal Department, DuPont Company, Wilmington, Del., for Baxter et al.

OPINION
LAYTON, District Judge.
This opinion supplements those of September 26, 1966, and October 19, 1966, reported at 259 F.Supp. 922, in which it was decided that a United States District Court had the power, pursuant to 35 U.S.C. § 24, to order production of documents under Rule 34 of the Rules of Civil Procedure in litigation pending before the Patent Office. The purpose of this opinion is to define the scope of discovery.[1]
Some repetition of what was said in 259 F.Supp. 922 is necessary. This is a motion for production under Rule 34 F.R.Civ.P. ancillary to a four-party patent interference proceeding which is to determine who was the first inventor of polypropylene, a chemically produced *736 plastic. Natta et al. is the senior party, having been awarded a priority date of June 8, 1954. DuPont (Baxter et al.) is the next senior party, having been awarded a priority date of August 19, 1954. The two most junior parties are not before this Court, but are participating in related proceedings before United States District Courts in Illinois Oklahoma.

THE ISSUES
Generally speaking, DuPont and Natta seem to be in agreement that the filing dates awarded to each party are presumptively correct and serve to establish the burden of proof in the interference proceeding. 37 C.F.R. 1.257(a).[2] Moreover, it is not disputed that the three junior parties are free to attempt to contest the presumption of the correctness of their dates by proof that the date should have been earlier. However, Natta, because he relies on a foreign (Italian) patent application, may not prove that his own invention date is earlier than June 8, 1954. 35 U.S.C. §§ 104, 119.
In other words, each of the three junior parties may prove that its invention date was earlier than its awarded filing date. Natta cannot. Natta, however, can contest any attempt by the junior parties to advance their invention dates ahead of his own June 8, 1954 date. In an effort to contest the attempts of DuPont to advance its date, Natta has filed this Rule 34 motion for production of documents.
DuPont, apparently agreeing in general to the basic principles just stated, claims it has made available to Natta all its file material bearing on the issue as late as August 19, 1954, its awarded priority date. However, the nub of this controversy, and what DuPont strenuously resists, is Natta's effort under this Rule 34 motion to obtain discovery of DuPont's files between August 19, 1954, its awarded date, and December 30, 1955, the date of its latest relevant application. This point requires some analysis. It has already been shown that there is no doubt about the priority date fixed by Natta's application. This has been determined by statute. The same is not true, however, as to DuPont's filing date, which is subject to challenge for several reasons. At the time this interference was declared, DuPont had filed three applications for patents on polypropylene with the Patent Office. The dates of the three applications were December 30, 1955, June 22, 1955[3] and August 19, 1954. It appears that DuPont was originally made a party to the interference on the basis of its December 30, 1955 application. Thereafter, DuPont made a timely motion under Patent Rule 234 to shift its priority date to August 19, 1954, arguing that the application filed on that date disclosed the invention in issue. This motion was granted by the hearing Examiner over the opposition of the other parties, including Natta.
However, if the Examiner's ruling in this respect is hereafter reversed, as it can be, Bierly v. Happoldt, 201 F.2d 955, 40 CCPA 774 (1953), DuPont's priority date would be advanced to December 30, 1955.[4]
The correctness of the Examiner's ruling is not a concern of this Court. Nor should it attempt to pass upon the admissibility of evidence in the interference proceeding. Its function is to determine as best it can the issues presented *737 by this proceeding and decide whether Natta has shown good cause for the production of documents which are either relevant to these issues or may lead to the discovery of other documents relevant thereto. And in this connection, it is to be borne in mind that DuPont in presenting its case to the Examiner had the advantage of being able to place in evidence documents tending to support its position and of suppressing any material which might tend to weaken its case.
Nevertheless, DuPont strenuously resists production of any documents dated between August 19, 1954 and December 30, 1955. It advances two reasons. First, it argues that in deciding the validity of the August 19, 1954 filing date, the parties are limited to the four corners of the application itself. This may be true in general but the circumstances here, where Natta is attacking not only the validity of the disclosure of the August 19, 1954 and December 30, 1955 applications, but also the decision of the Examiner granting DuPont the priority date of August 19, 1954, make this argument unpersuasive.
Second, DuPont contends that the sole issue in this interference is priority of invention and Natta has no right to examine material in its files dating subsequent to August 19, 1954. This is demonstrably incorrect. While the general rule is that the main issue in an interference proceeding is priority, 35 U.S.C. § 135; Normann v. Schmidt, 125 F.2d 162, 165, 29 CCPA 822 (1942); many ancillary issues can also be raised and Natta has raised several: (1) failure of both the July 1954 and December 1955 applications to disclose an invention;[5] (2) conception;[6] (3) reduction to practice;[7] and (4) unpatentability over prior art.[8] It is not for this Court to decide the merits of these issues, merely to point them out.

GOOD CAUSE
In order to be successful on its Rule 34 motion, Natta must, of course, demonstrate good cause for production. The fact that documents relevant to one or more of the issues before the Examiner may exist in the files of DuPont of which Natta has no knowledge and, of course, to which it has no other means of access, should, broadly speaking, furnish sufficient good cause under the Rule.[9] And this is particularly true, as elsewhere observed, where DuPont, in its case in chief, had the advantage of selecting those of its documents which supported its contentions and of suppressing those which may have tended to weaken its case. Moreover, even if not relevant and admissible, documents may be ordered produced if they tend to lead to a discovery of other relevant material.
That the documents to be produced were to be used to attack the invention date of the opponent, in itself, has been regarded as good cause for production. Gladrow v. Weisz, 354 F.2d 464, 468 (5th Cir. 1965). Furthermore, unlike the circumstances presented in Korman v. Shull, 184 F.Supp. 928 (W.D.Mich. 1960), Natta cannot, through his own experts and processes, reproduce the processes and data in DuPont's files. Also, two key DuPont employees, active in the events relied on by DuPont are *738 now dead. Since they are not available for cross-examination, Natta should have access to DuPont file material in order to obtain relevant facts regarding their participation in this inventive process.
More particularly, the attack by Natta on the Examiner's grant to DuPont of the August 19, 1954 filing date demonstrates another reason why Natta should have access to DuPont's file material. As before stated, it is not the function of this Court, only peripherally concerned with the proceeding, to decide the correctness of the Examiner's ruling in this respect. The Examiner's decision will be reviewed by the full Board of Patent Interferences. Therefore, in appraising the correctness of the Examiner's ruling, reason and justice require that this tribunal have before it all relevant facts and documents. If discovery is denied now, and permitted only when and if the Board of Patent Interferences reverses the Examiner, Natta would be severely prejudiced. This is because it is the practice of the Board of Patent Interferences to pass upon all the issues, including the key issue of priority, at one time. Thus, unless production is granted now, the Board would not have all the relevant facts before it in deciding the issues. In addition, the results of the interference are sure to be appealed, either to the Court of Customs and Patent Appeals, 35 U.S.C. § 141, or to a District Court, 35 U.S.C. § 146. If appealed to the former tribunal, no additional evidence may be put on record, and if to the latter, the advantage of the additional evidence so taken would, to a certain extent, be counterbalanced by the presumption of administrative correctness. This also demonstrates good cause for Natta's motion.
There are other reasons which, in the judgment of the Court, show good cause. Natta has attacked both of DuPont's applications on the ground that they fail to disclose a valid invention. The ancillary issues of conception and reduction to practice are thus presented. With reference to this latter issue, the Court of Patent Appeals in Walkup v. Greig, 332 F.2d 800, 806, supra, said this:
"* * * Moreover, it is well established that subsequent conduct with respect to the invention is properly to be considered where there is doubt that the activities relied upon constitute a reduction to practice. * * "[10]
Again, it would seem that Natta should have access to DuPont's file material in order to meet the in-chief case of DuPont on these points.
Yet another reason exists, although not as important as the foregoing. While resisting all Natta's efforts to gain access to its file material between the dates of August 19, 1954 and December 30, 1955, DuPont itself, in a few instances, has used documents within this period in support of its case in chief.
Finally, there is the issue of unpatentability over prior art which charges DuPont with having made use of Natta's published ideas and methods, or some of them, in arriving at its own process. It is undisputed that soon after June 8, 1954, the date of Dr. Natta's Italian application, he disseminated a great deal of information about it in scientific and technical journals and by speeches. Natta claims the right, and the Court finds good cause shown, to inspect DuPont file material in order to attempt to determine whether it made use of any of his methods or ideas in arriving at its (DuPont's) own process. If so, DuPont might be barred from its right to a patent on this ground. Agawam Woolen Co. v. Jordan, supra.
In conclusion, no doubt a substantial amount of the material to be produced will consist of memoranda containing comments and opinions interchanged between DuPont personnel engaged *739 in the development of polypropylene. In this regard, the language of Judge Leahy in Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792, 795 (D.Del.1954) is apt:
"The second ground on which the documents are withheld is the assertion some merely express opinions of inventors, engineers, and patent department employees. Without more, this is an insufficient reason to preclude their disclosure to plaintiff in pretrial discovery. If not otherwise protected from production, these recorded opinions under the circumstances are to be produced for what they are worth as clues to other discoverable and admissible factual evidence if that be still within the realm of reason after the huge volume of documents discovered to date  as potential impeachment tools; as perhaps explanatory of the inventors' original claims under the patents in suit, or as containing material admissions concerning the validity of defendants' patents, and the like." (Emphasis added.)
Nor may DuPont successfully contend that an examination of what must be its very extensive files should be denied on the ground that the material sought is not sufficiently identified. In some cases, a party may desire to examine a few documents known to be in his adversary's files in which event the proper procedure is to describe the material desired in order to save the latter's time in locating it. However, in involved and prolonged litigation such as this appears to be, documents may be sufficiently identified by categories, as was done in this motion. 4 Moore's Federal Practice, § 34.07, p. 2465; Wilson Jones Co. v. Elbe File & Binder Co., 33 F.R.D. 356 (D.Mass.1962); Houdry Process Corp. v. Commonwealth Oil Refining Co., 24 F.R.D. 58 (S.D.N.Y.1959).
In summary, measured by discovery standards, the Court finds Natta has demonstrated good cause for discovery of relevant material in DuPont's files between August 19, 1954 and December 30, 1955, on a rather broad[11] scale.

THE SCOPE OF DISCOVERY
Subject to the discussion, infra, on the subjects of privileged communications and trade secrets, the Court directs that discovery, as defined below,[12] should consist generally of the following:
1. All documents relating to a period commencing February 16, 1954 and ending December 30, 1955, which in any way relate to the polymerization or attempted polymerization on behalf of DuPont of propylene as the sole alpha-olefin feed to a solid product, including all documents *740 in any way relating to any information or facts received or otherwise known to DuPont in connection with, or otherwise in any other way relating to, any facet of any of the following:
(a) The preparation, filing, and prosecution of the Baxter, Merckling, Robinson, and Stamatoff Application Serial No. 451,064, filed August 19, 1954, including any and all drafts of said application or amendments thereto, and all affidavits filed in connection therewith.
(b) The preparation, filing, and prosecution of Baxter, Merckling, Robinson, and Stamatoff's Application Serial No. 517,398, filed June 22, 1955, including any and all drafts of said application, amendments thereto or affidavits filed in connection therewith and any documents containing or referring to any information or facts relevant to the abandonment of such application.
(c) The preparation, filing and prosecution of Baxter, Merckling, Robinson, and Stamatoff Application Serial No. 556,548, filed December 30, 1955, including any and all drafts of said application, amendments thereto or affidavits filed in connection therewith.
(d) The preparation, filing and prosecution of any applications for patent filed in the United States between February 16, 1954 and December 30, 1955, for or on behalf of DuPont Company or any employee of DuPont which in whole or in part disclose and/or claim polymerizing propylene as a sole alpha-olefin feed by any method, to give a normally solid product.
This language shall be deemed to include those documents requested by Natta in its categories numbered 1 (a, b, c, and d), 2, 3, 4, 5, 7, 10, 11, 13,[13] 14, 15, 16, 17, 18, 21,[14] 22, 23, 24, 25, 26, 27, 28 and 30, including the masked portion of documents previously displayed to counsel and introduced into evidence before Interference 89,634.
2. Also, all documents which refer to, contain comments by anyone associated with DuPont in any capacity concerning, or otherwise relate to Professor Giulio Natta's talks, lectures, discussions, patents, or other writings on polypropylene, whether in his sole capacity or in conjunction with others, which documents bear dates in the period between August 19, 1954, and December 30, 1955; all documents which refer in any way or comment upon or otherwise relate to any activity or work of persons other than DuPont employees in the field of propylene polymerization and which bear dates in the period from February 16, 1954, to December 30, 1955. This language shall be deemed to include those documents requested by Natta in its categories numbered 6, 19 and 20.
3. Also, all documents which in any way relate, refer or pertain to the preliminary statement filed on behalf of Baxter et al. in Interference 89,634 or any portion thereof, including those relating to the decision by DuPont or anyone acting in its capacity or on its behalf to include in the preliminary statement of Baxter et al. the following allegation found at page 2 thereof, last sentence of paragraph (a):
"These experiments were further continued until May 17, 1954, when a sufficient quantity of tough polypropylene was made by polymerization of propylene in the presence of reduced titanium tetrachloride in an inert hydrocarbon medium, and this polypropylene was converted into a film, analyzed by the infra-red technique, and proved to be partially crystalline polypropylene.",
further including those documents which in any way relate, refer to, or comment *741 upon such statement subsequent to the time that the preliminary statement was filed. This language shall be deemed to include those documents requested by Natta in its categories numbered 8 and 9.
4. Also, the monthly report of the Research Division of the DuPont Company for October 1953,[15] or for whatever month it was, which relates to the establishment of what the witness Ivan M. Robinson referred to as the broad program for investigation of catalysts and which resulted in Dr. Marckling's being detailed to this work (all as mentioned at page 209, volume 3 of the Baxter et al. Testimony-In-Chief in Interference 89,634) and any subsequent writings of any nature which modified the scope, aims, or direction of the said program from the date of its alleged establishment to December 30, 1955. This language shall be deemed to include Natta's category 12.
Natta's request to have produced those documents in Categories 29 and 31 is denied.

PRIVILEGE
DuPont's contention that many of the documents sought are privileged does not stand close scrutiny. It argues that many of the thirty-one categories of documents sought by Natta involve communications between attorney and client. However, while there is some case law[16] to the contrary, this Court follows the rule of this District that communications to and from a lawyer serving in a corporation patent department are excluded from the attorney-client privilege. Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792 (D. Del.1954); American Cyanamid Co. v. Hercules Powder Co., 211 F.Supp. 85 (D. Del.1962). See also United States v. United Shoe Machinery, 89 F.Supp. 357 (D.Mass.1950).
Specifically, this Court adopts the following language from Judge Leahy's discussion of the subject in the Zenith case:
"* * * attorney-employees of the patent departments of RCA, GE, or WE * * * do not `act as lawyers' when not primarily engaged in legal activities; when largely concerned with technical aspects of a business or engineering character, or competitive considerations in their companies' constant race for patent proficiency, or the scope of public patents, or even the general application of patent law to developments of their companies and competitors; when making initial office preparatory determinations of patentability based on inventor's information, prior art, or legal tests for invention and novelty; when drafting or comparing patent specifications and claims; when preparing the application for letters patent or amendments thereto and prosecuting same in the Patent Office; when handling interference proceedings in the Patent Office concerning patent applications. * * *" 121 F.Supp. at 794.
From an examination of the description of the categories to be produced and of the briefs filed with the Court, all of the documents appear to fall within the above quoted language. Attorney-client privilege, therefore, does not seem to preclude the production of any of the documents heretofore ordered. However, if DuPont feels that certain of its file material does not come within the language of privilege in Zenith, supra, and will assemble it, it may make an application for relief in connection with any application it cares to make under the ensuing heading of Trade Secrets.

*742 TRADE SECRETS
As was stated in 259 F. Supp. 922, no matter even bordering on trade secrets will be permitted to be revealed. However, the mere fact that a trade secret might be contained within a document is not per se a reason to preclude its production, for there is no true trade secret privilege. Cities Service Oil Co. v. Celanese Corp. of America, 10 F.R.D. 458 (D.Del.1950). Therefore, in line with its previous opinion, the Court will endeavor to prevent any DuPont trade secret from becoming revealed publicly. Rule 30(b) gives the Court a wide discretion, as concerns any specific document, to protect trade secrets, e. g., by forbidding discovery, entering an appropriate protective order, or appointing a master to supervise the discovery and inspection of such document. See, e. g., Remington Rand, Inc. v. Control Instrument Co., Inc., 7 F.R.D. 18 (E.D.N.Y. 1947); Hirshhorn v. Mine Safety Appliances Co., 8 F.R.D. 11 (W.D.Pa.1948); 4 Moore's Federal Practice, § 34.15, p. 2522. While DuPont has, at the Court's request, made some endeavor to delineate its trade secret objection with particularity, most of the objections still remain very general in nature.[17] It is impossible to determine such objections in vacuo. Accordingly, when DuPont has assembled the required documents, it may make a single application for appropriate action to cover material thought to constitute trade secrets.
Application by motion to the Court under either or both of the headings of Privilege and Trade Secrets, accompanied by those documents[18] on which the motion is based, must be made not later than April 1, 1967. DuPont shall make available to the party Natta et al. all other of the required documents not later than April 10, 1967.
NOTES
[1] Because of the Court's lack of background in Chemistry, both sides were requested to agree to the appointment of a technical advisor (not an expert witness) to assist it, where necessary, in understanding chemical problems. Accordingly, Dr. Laurence A. Wood, Polymers Division of the National Bureau of Standards, Department of Commerce, Washington, D. C., was selected. He was of great assistance in this respect.
[2] "The parties to an interference will be presumed to have made their inventions in the chronological order of the filing dates of their applications for patents involved in the interference or the effective filing dates which such applications have been accorded; and the burden of proof will rest upon the party who shall seek to establish a different state of facts."
[3] This application has been abandoned.
[4] It might be argued that no real issue is presented by the award to DuPont of the earlier August 19, 1954 filing date for the reason that, in any event, it is not prior to Natta's June 8th, 1954 date. But the Court is convinced that DuPont received a decided technical advantage as the result.
[5] 35 U.S.C. § 135; Stelos Co. v. Hosiery Motor-Mend Corp., 295 U.S. 237, 241, 55 S.Ct. 746, 79 L.Ed. 1414.
[6] Generally, see Biesterfeld, Patent Law, PP. 142 et seq.
[7] Ibid. Walkup v. Greig, 332 F.2d 800, 806 (C.C.P.A.1964).
[8] Agawam Woolen Co. v. Jordan, 7 Wall. 583, 74 U.S. 583, 19 L.Ed. 177. By this is meant that DuPont adopted certain of Natta's methods and ideas in formulating tis processes and is, therefore, not entitled to the grant of a patent.
[9] "Plaintiff meets F.R. 34's requirement of `good cause' for production when it shows both the relevance of the documents  all pertain to patents in suit and the information contained in them is, by their nature, within the exclusive knowledge of the defendants. * * *" Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792, 795 (D.Del. 1954).
[10] Walkup is applicable particularly if the Patent Examiner's decision awarding DuPont the August 19, 1954 filing date is hereafter reversed and DuPont is forced to rely on the December 30, 1955 application.
[11] DuPont claims that if this motion is granted it will create a substantial hardship on its personnel in producing file material, and the expense will exceed $50,000.00, amounting, in effect, to harassment. But compare Zenith Radio Corp., supra, where the production of 1600 documents was upheld.
[12] As used herein, "DuPont Company" and "DuPont" encompasses all officers, directors, employes, staff members, agents and representatives, including counsel.

As used herein, the term "document" is used in its broad sense and includes, except as hereafter noted, the following items (relating to a period commencing February 16, 1954 and ending December 30, 1955) whether printed, or recorded, or reproduced by any other mechanical process, or written or produced by hand, namely: agreements, communications, including intracompany communications; correspondence, telegrams; memoranda, summaries or records of telephone conversations; summaries or records of personal conversations or interviews, diaries; statistical statements; graphs; laboratory and engineering reports and notebooks; charts, plans; drawings; minutes or records of meetings or conferences; reports and/or summaries of interviews; reports and/or summaries of investigations; opinions or reports of consultants; patent appraisals; opinions of counsel; records; brochures; pamphlets; advertisements; circulars, trade letters; press releases; drafts of any document; original or preliminary notes; batch sheets of pilot and manufacturing plants; and marginal comments appearing on any document, but does not include any document heretofore offered in evidence in this Interference 89,634.
[13] This category is limited to those documents which relate to the polymerization of propylene as the sole alpha-olefin feed to a solid product, and not to the polymerization of propylene generally.
[14] This is an exception to the general limitation of documents relating to the period commencing February 16, 1954, and ending December 30, 1955.
[15] This is an exception to the general limitation of documents relating to the period commencing February 16, 1954, and ending December 30, 1955.
[16] Georgia-Pacific Plywood Co. v. United States Plywood Co., 18 F.R.D. 463 (S.D. N.Y.1956); Ellis-Foster Co. v. Union Carbide and Carbon Corp., 159 F.Supp. 917 (D.N.J.1958); International Minerals and Chemicals Corp. v. Golding-Keene Co., 162 F.Supp. 137 (W.D.N.Y.1958).
[17] The Court points to Natta's offer to stipulate some mutually agreeable plan for disposing of this sort of material and suggests that the parties explore this possibility.
[18] These documents may be submitted to the Court under seal.