**FRILETTE et al., Movant,**

v.

**KIMBERLIN et al.**

**Misc. No. 83.**

United States District Court,
D. Delaware.

May 15, 1973.

**494**

Murray M. Schwartz and Daniel A. Durkin, Murdoch, Longobardi, Schwartz & Walsh, Wilmington, Del., Farrell Roy Werbow and Davidson C. Miller, Stevens, Davis, Miller & Mosher, Arlington, Va., of counsel, for Frilette and others.

David A. Anderson, Potter, Anderson & Corroon, Wilmington, Del., Thomas F. Reddy, Jr., of Pennie, Edmonds, Morton, Taylor & Adams, New York City, Keith E. Mullenger and Clyde C. Metzger, New York City, and John J. Schlager, Linden, N. J., of counsel, for Kimberlin and others.

## OPINION and ORDER

CALEB M. WRIGHT, Chief Judge.

This is a motion to compel discovery under Rule 37 F.R.Civ.P. filed pursuant to 35 U.S.C. § 24 authorizing discovery in Patent Office interferences matters by resort to the Federal Courts and the utilization of the Federal Rules of Civil Procedure.

The interference is between the Kimberlin U. S. reissue Patent No. Re. 26,-188, filed August 24, 1962 claiming a priority date of the original application filed February 5, 1957, and the Frilette application No. 763,433 filed September 26, 1968. The real parties in interest are, Mobil Oil Corporation (Mobil), the assignee of Frilette, and Esso Research and Engineering Company (Esso), the assignee of Kimberlin.

This is a two party interference in which Frilette has been declared the junior party and Kimberlin has been declared the senior party. Frilette seeks an order compelling Kimberlin to designate certain witnesses under F.R.C.P. 30(b)(6) to answer certain interrogatories under F.R.C.P. 33, to produce documents under F.R.C.P. 34, and to admit certain facts under F.R.C.P. 36. The interference is presently in the preparation for testimony stage prior to the commencement of the junior party's taking of testimony. See Patent Office Rule 251(a).

Prior to the initiation of the proceeding in this Court, Frilette filed a motion for discovery with the Board of Interferences under Patent Rule 287(c) seeking substantially the same discovery requested here. The Board of Interferences denied the motion on the grounds

that the request was premature since the time had not elapsed for Kimberlin to make service of the documents and lists upon which it would rely as the factual basis for its case in chief. As additional basis for its refusal the Board noted, that as to matters ancillary to priority, Frilette had failed to file any motions raising these ancillary issues under Patent Rule 231 and that its request for discovery on these issues was too speculative, broad and indefinite to constitute an adequate basis for granting discovery.

Frilette argues that the Board of Interferences' denial of its discovery motion clearly indicates the ineffectiveness of Rule 287(c) as a mechanism to afford the type of broad discovery permitted by 35 U.S.C. § 24 and the Federal Rules of Civil Procedure. In re Natta, 388 F. 2d 215, 217 (3rd Cir. 1968). See also Babcock & Wilcox v. Foster Wheeler Corp., 432 F.2d 385 (3rd Cir. 1970); Babcock & Wilcox Co. v. Combustion Engineering, Inc., 314 F.Supp. 235 (D.Conn. 1968), aff. per curiam 430 F.2d 1177 (2nd Cir. 1968). Moreover, Frilette asserts that under § 24 it is not limited by the Patent Office rules of admissibility, In re Natta, supra, or rules governing the time and order of the presentation of testimony, Babcock & Wilcox v. Combustion Engineering, Inc., supra.

Kimberlin, in opposition takes the position that the introduction of a discovery procedure in the Patent Office eliminated much of the necessity for federal district courts to intervene in discovery, that, by Frilette's own admission, many of the discovery requests are based on mere conjecture, speculation and hope that it might find some evidence to support several potential defenses in the interference, that the ancillary matters sought to be examined into should have been raised by motion under Patent Office Rule 231 and finally, that certain of the matters to be pursued if the motion is granted e. g. the sufficiency of the reissue oath, are matters for ex parte consideration and cannot be raised in the interference.

Frilette has correctly characterized the previous cases ruling on the scope of 35 U.S.C. § 24 as holding that the statute was intended to provide broad discovery procedures through federal district courts. However, the cases relied on by Frilette were decided prior to two occurrences which render them distinguishable. First, the In re Natta, cases, supra, precede the 1970 amendments to the Federal Rules of Civil Procedure which eliminated the good cause requirement as a prerequisite to the grant of discovery under Rule 34 F.R.C.P. In fact, several of the cases granting broad discovery specifically cite the good cause requirement as a factor which will guarantee against permitting meritless discovery. See Babcock & Wilcox Co. v. Foster Wheeler Corp., supra, 432 F.2d at 388; Babcock & Wilcox Co. v. Combustion Engineering Inc., supra, 314 F.Supp. at 237; In re Natta, supra; International Business Machines Corp. v. Sperry Rand Corp., 44 F.R.D. 7 (D.Del.1967); Korman v. Shull, 184 F.Supp. 928 (W. D.Mich.1960). In one of the more frequently cited cases allowing broad discovery under 35 U.S.C. § 24, Judge Zampano states,

"This is not to say, however, that an automatic and indiscriminate inspection of the senior party's file is authorized. The requirements of good cause, relevance, reasonable designation of [the] documents, and the principles of privilege were designed to prevent the abuses (the senior party) suggests." Babcock & Wilcox Co. v. Combustion Engineering Inc., 314 F. Supp. supra at 237.

It does not appear that the amendments to the F.R.C.P. deleting the good cause requirement in many areas of discovery were undertaken after any specific analysis of their concomitant effect on 35 U.S.C. § 24 and discovery proceedings ancillary to patent interferences. Since the good cause requirement was apparently a factor in the federal courts' willingness to interpret § 24 broadly, this Court is unable to conclude that § 24 would have received a similar construc-

tion absent this safeguard. In such circumstances, it would not be unreasonable to continue to impose a good cause requirement under 35 U.S.C. § 24. Second, and more importantly, is the Patent Office's introduction of the discovery provisions of Rule 287. The absence of any discovery mechanism in the Patent Office has frequently been cited as a factor mandating a broad reading of 35 U.S.C. § 24 and necessitating the assumption of jurisdiction over interference discovery by the federal courts. See Babcock & Wilcox v. Foster Wheeler Corp., supra, 432 F.2d at 387; see also Campbell and Johnson v. Gilby, Hoberg and Phibbs, 146 U.S.P.Q. 723, 725 (P.O. Bd.Intfs. 1965). This may also have been the element which persuaded federal courts to refuse in any way to attempt to tailor the § 24 discovery procedures to the Patent Office's interference time schedule.

 The recently adopted Patent Office discovery Rule affords each party preliminary access to his adversary's documentary and testimonial evidence, Rule 287(a)(1),[1] and creates a mechanism for further discovery of matters within the control of a party which the Board of Interferences deems to be relevant to the issue of priority, Rule 287 (c).[2] The standards enunciated in Rule 287(c) and Rule 243 appear to reflect the Patent Office's efforts to construct a discovery process which embodies the good cause requirement cited initially by the courts in the In re Natta cases. Subsequent to the issuance of this rule, at least one federal judge has indicated that some reshaping of the federal court's role under 35 U.S.C. § 24 might be appropriate. See Babcock & Wilcox Co. v. Foster Wheeler Corp., 173 U.S.P.Q. 480 (D.N.J.1972).[3] While a federal court cannot abrogate its responsibility to assume jurisdiction under 35 U.S.C. § 24, it must not blind itself to the ancillary, supportive role, it is designed to fulfill in interference matters. Until the Patent Office has had a reasonable opportunity to implement its discovery procedures and has demonstrated the parameters within which they will be administered, the courts are in no position to evaluate the potential efficacy of the procedures and the possibility that the courts will be able to assume a secondary role in discovery. In light of these general considerations, the Court must scrutinize Frilette's particular discovery requests in light of the issues before the Patent Office.

1. 287. Discovery.
 (a)(1) Each party who expects to take testimony must serve on each opposing party who requests service the following:
 (i) A copy of each document in his possession, custody, or control and upon which he intends to rely,
 (ii) A list of and a proffer of reasonable access to things in his possession, custody, or control and upon which he intends to rely, and
 (iii) A list giving the names and addresses of all persons whom he intends to call as witnesses and indicating the relationship of each person to the invention in issue.

2. (c) Upon motion (rule 243) brought by a party during the period for preparation for testimony, or thereafter as authorized under rule 245, and upon a showing that the interest of justice so requires, the Board of Patent Interferences may order additional discovery as to matters under the control of a party within the scope of the discovery rules of the Federal Rules of Civil Procedure, specifying the terms and conditions of such additional discovery. An order by the Board granting or denying a motion under this paragraph shall not be subject to review prior to a decision awarding priority.

3. After a detailed analysis of the history of 35 U.S.C. § 24 and the adoption of Rule 287, Judge Coolahan states,
 ". . . If the interference parties are permitted to seek broader discovery before the district court at any stage of the proceedings, the Patent Office Rules of Practice are reduced to a nullity. This is an unfortunate but unnecessary consequence of dual subject matter jurisdiction in patent interference discovery proceedings. . . . The parties should be given every encouragement to seek discovery, at least in the first instance, before the Board of Patent Interferences." 173 U.S.P.Q. at 483 (footnote omitted).

The subject matter of this interference is a commercial process for "cracking" large hydrocarbon macromolecules of petroleum into smaller molecules of gasoline and other useful petroleum products.[4] The process involves utilization of a crystalline alumino-silicate catalyst, "Zeolite" or "molecular sieve", which contains a network of highly uniform pores into which the petroleum macromolecules enter, are cracked, and through which the reaction products leave the crystalline structure. This particular process employs a catalyst with pores of between 6 and 15 Angstroms (A°) in diameter. The instant interference is one of several interferences between Esso and Mobil, the real parties in interest by reason of their ownership of or licenses for the several patent and patent applications involved, concerning various aspects of the catalytic conversion process for the reduction of petroleum macromolecules with a crystalline molecular seive zeolite type cracking device.[5]

Frilette's discovery requests are directed to several areas: 1. facts relating to the Kimberlin reissue oath and the patentee's compliance with the reissue statute; 2. matters relating to the meaning of the terms of the interference counts; 3. facts relating to the Kimberlin disclaimer of a portion of its disclosure with respect to pore size of its catalyst; and 4. matters relating to issues which are ancillary to priority, e. g. fraud, misjoinder of inventors, and lack of originality.

Through its requests, Frilette is attempting to utilize the panoply of discovery mechanisms to examine its opponent's entire case from conception to the issuance of its patent in an effort to glean some facts or materials which will in some manner weaken or defeat Kimberlin's claim of priority. By its counsel's representation, Frilette has made requests concerning issues ancillary to priority on the speculation that some pertinent evidence might be uncovered.[6] Frilette has been in several previous in-

---

4. The following count is exemplary of the eight counts involved in this interference.
 *Count 1* A hydrocarbon conversion process which comprises contacting a hydrocarbon fluid in a conversion zone at an elevated temperature with a crystalline metallic alumino-silicate catalyst having uniform pore openings between about 6 and about 15 Angstrom units, said catalyst having been prepared by base exchange of the sodium form of the crystalline alumino-silicate with a cation to substantially reduce its sodium content and thus improve its catalytic ability for carrying out said conversion, and recovering a converted hydrocarbon product having a molecular weight no higher than said first-named hydrocarbon fluid.

5. In addition to the interference herein, Esso and Mobil were in Interference 92,280, declared October 5, 1961, involving a crystalline metallic alumino-silicate catalyst with pores of 6 to 15 A° in diameter as the sole catalytic agent. (The instant interference evidently con-

cerns a metallic alumino-silicate which has had its sodium content substantially removed to improve its catalystic propensities).
 The companies were also in Interference 93,040 concerning a similar molecular sieve catalyst with pores of 5A° for cracking paraffins to olefins; Interference 93,592, involving a cracking process using a crystalline alumino-silicate base molecular sieve with pores of 6 to 15A° which had other catalytic materials deposited on it; and Interference 95,142, involving in part a cracking process using the crystalline alumino-silicate molecular sieve with an added catalyst introduced into the zeolite structure.

6. Counsel for Frilette, Mr. Werbow made the following statements regarding the status of Frilette's knowledge on the issue of fraud and the discovery requests directed to that issue: "We don't allege it [fraud], we don't know it, but it certainly could lead to it, and we think we are entitled to that area." (Tr. 17). This statement is typical of those evincing the status of Frilette's knowledge on the various ancillary matters.

terferences raising the subject matter presented in this interference or subject matter which is closely related. It has had considerable access to Kimberlin's numerous patent applications and perhaps to other materials, yet it is unable to assert a single fact which might support a contention of fraud, lack of originality, etc. In addition, it has not raised any of its ancillary issues in the requisite Rule 231 motions. Therefore, there is a strong possibility that the Board of Interferences would refuse to consider these issues absent some showing by Frilette to justify its delay. In such circumstances, especially when the ancillary matters would be immaterial under Patent Office procedure as the interference presently stands, Frilette has made neither a showing of good cause nor a demonstration of any reason which would persuade the Court that the discovery requests relating to ancillary matters should be granted.[7]

■ In addition, the Court agrees that under Rule 287(a) and (c), Frilette's discovery directed to Kimberlin's case in chief is premature. Until the lists and documents are served as required by Rule 287(a), the Patent Office and the Court have no way of ascertaining the necessity for additional discovery in these areas. This Court is of the opinion that it should exercise its discretion and deny the discovery requests relating to Kimberlin's case at least until the Rule 287(a) exchange mechanism has functioned, and the parties are apprised of their adversary's intentions. This recognition and observ-

ance of the Patent Office's rules and time schedule will provide an opportunity for an analysis of the Rule 287 procedure, see Babcock & Wilcox Co. v. Foster Wheeler Corp., 173 U.S.P.Q. 480, supra, and give the court an indication of the necessity or desirability for a restructuring of its role and the standards employed under 35 U.S.C. § 24. See also Babcock & Wilcox Co. v. Foster Wheeler Corp., 163 U.S.P.Q. 140, 141 (3rd Cir. 1969) (Freedman, J. concurring).

For the reasons stated above, the Court will deny Frilette's motion for an order to compel discovery.

7. The Court is mindful of the fact that on an appeal to the district court from a decision by the Board of Patent Interferences, the movant may be entitled to broad discovery under the Federal Rules without any showing of good cause or other particular reason for the requested discovery. Moreover, the Court would undoubtedly consider any relevant matters which had not been presented to the Patent Office because subsequently developed evidence was not available during the initial proceedings.

While it might be more desirable that all potentially relevant evidence and issues

be pursued so that the Board of Interferences, the primary examiner and/or the Commissioner are exposed to all such material, the Court cannot dictate what the Patent Office will or will not consider or how it will implement its rules. In re Decision Dated August 12, 1968, 160 U.S.P.Q. 154 (Comm. of Patents). Since the Court's role is ancillary at this stage, it can best accomplish its role by not precipitously entering the fray until it is better informed as to the issues and procedures which will be pertinent in the Patent Office.