508 F.2d 205
 184 U.S.P.Q. 266
 Vincent J. FRILETTE, and Paul R. Weisz, Movants-Appellants,
v.
Charles N. KIMBERLIN, Jr., and Elroy M. Gladrow, Opposers.
Richard J. DUFFY, Plaintiff-Appellee,
v.
Gerald BARNES, Joseph R. Preziosi, William F. McGuinness,
James B. Duke,Richard A. Craig, Charles C. Faroni,
Richard Baubles and Donald
Sager,Defendants-Appellants.
 Nos. 73-1622, 73-1635 and 73-1695.
 United States Court of Appeals, Third Circuit.
 Frilette Appeal Argued Feb. 15, 1974, Reargued Sept. 13,
1974, Barnes AppealArgued Jan. 9, 1974, Reargued
Sept. 13, 1974.
Decided Dec. 16, 1974, As Amended Jan. 27, 1975.
 
 Farrell R. Werbow and Davidson C. Miller, Stevens, Davis, Miller & Mosher, Arlington, Va., and Murrary M. Schwartz, and Daniel A. Durkin, Murdoch, Longobardi, Schwartz & Walsh, Wilmington, De., for appellants Frilette and Weisz.
 David F. Anderson, Potter, Anderson & Corroon, Wilmington, Del., for appellees Kimberlin and Gladrow; Thomas F. Reddy, Jr., Pennie & Edmonds, New York City, John J. Schlager, Linden, N.J., of counsel.
 Appeal from the United States District Court for the District of New Jersey (D.C. No. 822-73).
 James P. Hume, Gerald D. Hosier, Hume, Clement, Brinks, Willian, Olds & Cook, Ltd., Chicago, Ill., for appellee Duffy; Richard B. Megley, Benjamin C. Pollard, USM Corp., Beverly, Mass., of counsel.
 Howard P. Danzig, Riker, Danzig, Scherer & Brown, Newark, N.J., for appellants Barnes et al.; Prangley, Dithmar, Vogel, Sandler & Stotland, Chicago, Ill., Richard A. Craig, Amerace Corp., New York City, of counsel.
 Appeal from the United States District Court for the District of Delaware (D.C.Misc. No. 83).
 Frilette Appeal Argued Feb. 15, 1974.
 Before VAN DUSEN and ADAMS, Circuit Judges, and HUYETT, District Judge.
 Barnes Appeal Argued Jan. 9, 1974.
 Before ADAMS, HUNTER * and WEIS, Circuit Judges.
 Appeals Reargued Sept. 13, 1974.
 Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 To 'bite the bullet' is an old phrase currently enjoying a revival in popularity. It aptly describes our action in these appeals as we overrule our prior holding in In re Natta, 388 F.2d 215 (3d Cir. 1968), which erroneously gave a broad interpretation to 35 U.S.C. 24 (1952). It is our conclusion that the statute does not grant broad discovery authorization to the district courts in patent interference cases but limits ancillary jurisdiction to the issuance of subpoenas as permitted by prior practice.
 
 
 2
 These two appeals were argued together, and, while the fact situations differ, a common question of law governs the outcome of both cases. The relevant facts will be set out in abbreviated fashion, however, to give some background to the issues involved.
 
 
 3
 Both cases arise from interference proceedings filed in the Patent Office. This is an administrative process authorized by 35 U.S.C. 135 (1962) to determine which of two or more applicants is the first inventor and thus entitled to a partent. The applicant first in time is called the senior party, and the other is designated the junior party. After all parties have filed preliminary statements presenting the grounds for their positions, a period of time is set by an examiner for the filing of motions. Thereafter, the Board of Patent Examiners establishes a time schedule designating when the parties must present their trial evidence by means of deposition, affidavit, or stipulation. The junior party is required to produce his evidence first, and the senior party follows.
 
 
 4
 In the preliminary stages of the Duffy case, the junior party, Barnes, et al., filed a motion[1] supported by affidavits. The motion was denied by the patent examiner, and in due course the junior party sought relief from the Commissioner of Patents. In the interim, the senior party, Duffy, applied to the district court in New Jersey . . . for subpoenas duces tecum to compel discovery by depositions. After argument, the district court wrote an opinion1a permitting discovery but limiting it to matters dealing with the veracity of the affidavits attached to the junior party's motion.
 
 
 5
 In the Frilette case, the junior party filed a request for discovery with the Patent Office pursuant to its Rule 287(c).[2] The motion was denied by the Board as being premature since the time for filing documents by the senior party under Rule 287(a) had not yet expired. The junior party then applied to the district court in Delaware, which also denied discovery in an opinion holding that good cause had not been shown, and that the request was premature.[3]
 
 
 6
 This anomaly-- permitting discovery in the district court while matters are still pending before an administrative agency-- exists only in patent interferences. Generally, discovery is not available in administrative procedures. Davis, 1 Administrative Law Treatise 8.15 at 588 says:
 
 
 7
 'The APA contains no provision for pre-trial discovery in the administrative process and, of course, the provisions of the Federal Rules of Civil Procedure for discovery do not apply to administrative proceedings. Therefore, in the absence of special statutory provision, and in the absence of special administrative regulation, no procedure for discovery is normally available in a federal administrative proceeding.'
 
 
 8
 Though there has been much criticism directed toward the absence of these procedures in administrative matters, little has been done to cure it except in the Patent Office. See Davis, supra.
 
 
 9
 The parties in these cases assert their right to secure discovery in the district court upon the authority of 35 U.S.C. 24 which reads:
 
 
 10
 'The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpoena. The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent Office.'
 
 
 11
 This statutory provision was interpreted by this court in In re Natta, supra, to mean that Congress intended to include not only Fed.R.Civ.P. 45, pertaining to the attendance of witnesses and production of documents, but also the other rules of federal practice relating to discovery. The dissent by Chief Judge Seitz concluded that Congress had meant only to maintain the continuity of authority as granted to the courts under an earlier repealed statute pertaining to subpoenas and had not intended to incorporate the broad provisions relating to discovery generally. Essentially, the dissent reasoned that the courts were only to issue and enforce subpoenas in connection with the preparation of evidence for submission to the Board of Patent Interferences-- the practice which had previously prevailed.
 
 
 12
 Prior to Natta, pretrial discovery, as such, was unknown in cases before the Board of Patent Interferences. The earlier cases of Gladrow v. Weisz, 354 F.2d 464 (5th Cir. 1965);[4] Natta v. Zletz, 379 F.2d 615 (7th Cir. 1967),[5] and Korman v. Shull, 184 F.Supp. 928 (W.D.Mich.1960),[6] all involved instances where testimony was being prepared and subpoenas either had or could have been issued to compel production of documents. None of those cases actually involved pretrial discovery as that term is understood in the usual civil litigation.
 
 
 13
 The impact of the Natta decision was substantial. While the holding there, as in the earlier cases, applied to a situation where testimony was in progress, the dictum in that opinion was so broad that applications were soon made and granted where pretrial discovery was sought.[7] Because of the unique procedural posture of these cases, almost every order granting or denying discovery, no matter how routine in nature, became appealable.[8] 8] The appellate bench thus was called upon the review, in this isolated field, discovery matters which would have been interlocutory in other fields of litigation where they would probably never receive attention in an appellate brief.
 
 
 14
 In addition to this substantial burden which was placed upon the traditional process of judicial administration, the liberalization of discovery engendered an interference all its own-- one between the procedures in the Patent Office and those in the courts. The traditional timetable for submitting a case in the Patent Office and its concern for limiting the scope to relevant evidence were effectively neutralized if either party resorted to the federal courts for discovery in any or all stages in the interference proceedings. Instead of a role of 'co-operatively complementing'[9] the Patent Office, the courts became the means through which the parties ranged far and wide, geographically as well as in terms of relevance, in search of evidence which, although not germane to issues in the Patent Office, might lead to other admissible evidence.[10] This, of course, all took time and disrupted the schedules of the Patent Office with stays of proceedings in that agency while discovery proceeded in the courts.
 
 
 15
 Over the years the Patent Office has developed a procedure for handling these cases which required the junior party to present its evidence first. Discovery by the junior party in the district court prior to or while it presents its own case, however, frustrates the order of precedence which the Patent Office desires to utilize.[11] Whether that scheduling and priority are desirable is really not relevant, because they represent a choice by the agency responsible for processing these matters. The wisdom of the procedure is not entrusted to the courts.
 
 
 16
 Additional areas of conflict arose when the Patent Office ruled that certain discovery evidence which was secured in the courts would not be received in the Patent Office proceeding.[12] These conflicts between the Board of Patent Interferences and the court system would be serious enough if only one court were involved, but when several district courts and courts of appeals are concerned with different phases of the same litigation, the aggravations and delays become compounded.
 
 
 17
 Within the court system itself, the usual rules of confining control of the litigation to the principal forum become obscured and unworkable. Each district court has only the same interest in the outcome of the case as another. None has the decisional power in the final analysis; no one can guide and direct the parties toward some definitive goal. Although the matter ultimately will be submitted to the Patent Office, that agency cannot limit the activities or scope of discovery in the courts until that process has run its course. Interference proceedings thus lose the rudder that the court or agency which should have control over the case can provide.
 
 
 18
 Even if no discovery at all is permitted in the Patent Office, the parties are not without a remedy. They still have a right of appeal to a district court under 35 U.S.C. 146 (1952).[13] Such an appeal is de novo, and the full scope of discovery is permitted since the case then comes within the jurisdiction of the district court and the usual rules of procedure apply. But in such a situation the forum district does control the case, and orders on discovery are not appealable as of right but rather are interlocutory. Since the district court is familiar with the case, it is in a position to rule intelligently and promptly on the necessity of limitation or expansion of the scope of discovery in a particular case. There is an obvious improvement in judicial efficiency by having one court control the litigation.
 
 
 19
 Thus, the broad interpretation of Section 24 adopted by this court in 1968 established a procedural system which violated such tenets of good judicial administration as centralization of the litigation, disallowance of appeals on interlocutory and collateral matters, and primary jurisdiction. All repercussions were not negative, however. Spurred, no doubt, by the effects of the Natta decision, the Patent Office in 1971 chose to exercise the power to promulgate its own rules of discovery under the authority granted by Congress in 35 U.S.C. 23 (1952). The Patent Office discovery rules, being limited in time and scope, are not as liberal as the Federal Rules of Civil Procedure but do represent an improvement over prior administrative practice.
 
 
 20
 The obvious disadvantages of the Natta discovery doctrine and the advent of the Patent Office discovery rules have prompted us to reconsider our holding in that case, rather than simply to accept it as binding precedent. Despite its drawbacks, we would be bound by that rule had Congress in fact conferred such jurisdiction upon the courts, because we must recognize such jurisdiction as is granted by the legislative branch. The question is, did Congress in fact grant the jurisdiction which Natta thought to exist or did that conclusion come about only by erroneous construction and interpretation. We conclude that the latter is true.
 
 
 21
 In considering the words of the statute itself, two points are readily apparent. It does not use the word 'discovery,' nor is there any effort made to incorporate all of the federal rules of procedure. As Chief Judge Seitz pointed out in his Natta dissent, if Congress had meant to include discovery in its broad sense, such a substantial change in previous practice would naturally have been expected to be reflected in specific congressional recognition.[14] Not even the most enthusiastic advocates of the broad discovery made possible by Natta assert that all of the Federal Rules of Civil Procedure are included by transfer under Section 24.
 
 
 22
 Little would be served by repeating the excellent historical analysis of Section 24 set out in the Natta dissent. We simply adopt it at this time as the correct interpretation of the statute noting that, as is not unknown in judicial history, the opinion which was a dissent when rendered now becomes the law.[15]
 
 
 23
 We do not lightly overturn precedent, and stare decisis must be treated with respect. But when on deep and mature reconsideration it becomes apparent that an error has been made by the court, the proper step is correction. This is particularly so in a matter of procedure where no substantive rights are vested as a result of the earlier decision.
 
 
 24
 We do not believe it is necessary to wait for Congress to take the corrective action because the error was judge-made and the correction should be made in the same fashion. We cannot escape the fact that what has been done is in the nature of what, in the words of Chief Justice Hughes, might be called a 'self-inflicted wound.' We did not wait for congressional action to correct our mistake on 'manufactured diversity' but took that step ourselves in McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968), cert. denied sub nom., 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969). The fact that Congress has under consideration several proposals to amend the patent statutes,[16] including provisions relating to discovery, similarly should not cause us to delay setting our own house in order.
 
 
 25
 We hold that 35 U.S.C. 24 in referring to 'provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents' refers to the matters encompassed by Fed.R.Civ.P. 45(a), (b), (c), (d)(2), (e) and (f).
 
 
 26
 The order of the district court in Frilette v. Kimberlin will be affirmed.
 
 
 27
 The motions for attorneys' fees and for dismissal of the appeals by the senior party, Duffy, will be denied.
 
 
 28
 The request by the junior party, Barnes, to impound or enjoin the use of the evidence obtained by discovery will be denied. At this stage, it is not practicable to attempt to unscramble the eggs. The question of whether the evidence is admissible in proceedings in the Patent Office or other forums is a matter for decision by the body which might be asked to consider the material. We express no views on admissibility.
 
 
 29
 In Duffy v. Barnes, the orders of the district court of July 24, 1973 at No. 73-1635 and of August 6, 1973 at No. 73-1695 will be reversed, each party to bear his own costs.
 
 VAN DUSEN, Circuit Judge (dissenting):
 
 30
 I respectfully dissent from the holding of the majority that 35 U.S.C. 24, as worded in 1952, limits the ancillary jurisdiction of the district courts 'to the issuance of subpoenas as permitted by prior practice.' This holding is specifically stated by the majority at page 212:
 
 
 31
 'We hold that 35 U.S.C. 24 in referring to 'provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents' refers to the matters encompassed by Fed.R.Civ.P. 45(a), (b), (c), (d)(2), (e) and (f).'
 
 
 32
 The majority opinion concedes at page 211 that we are 'bound by' any jurisdiction conferred on the federal district courts by Congress.[1] The majority nevertheless appears to believe that district court jurisdiction, as mandated by the plain meaning of 35 U.S.C. 24, is undesirable. Thus the majority disregards the following language, first included in 24 by the Act of July 19, 1952, c. 950, 1, 66 Stat. 795:
 
 
 33
 'The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent Office.'
 
 
 34
 The plain or ordinary meaning of words used in a statute is applied in its construction. See Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 465, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968); Malat v. Riddell, 383 U.S. 569, 571, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966); Hughes v. Local No. 11, 287 F.2d 810, 818 (3d Cir. 1961); Hennesey v. Securities & Exchange Commission, 285 F.2d 511, 515 (3d Cir. 1961). 'The provisions of the Federal Rules of Civil Procedure' does not plainly mean only one of these Rules, namely Rule 45, as decided by the majority. In addition to the plain meaning of the present statutory language, an analysis of the previous language and amendments thereto contradicts the majority's position. The applicable statutory language, as contained in Title 35 U.S.C. prior to the July 1952 Act, and the substitute language in 35 U.S.C. 24 are set out as follows:
 
 35 U.S.C. 54 prior to July 19, 1952
 
 35
 'The clerk of any court of the United States, for any district or Territory wherein testimony is to be taken for use in any contested case pending in the Patent Office, shall, upon the application of any party thereto, or of his agent or attorney, issue a subpoena for any witness residing or being within such district or Territory, commanding him to appear and testify before any officer in such district or Territory authorized to take depositions and affidavits at any time and place in the subpoena stated. But no witness shall be required to attend at any place more than forty miles from the place where the subpoena is served upon him; and the provisions of section 647, of Title 28[2] relating to the issuance of subpoenas duces tecum shall apply to contested cases in the Patent Office.' First paragraph of 35 U.S.C. 24 after July 19, 1952
 
 
 36
 'The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpoena. The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent Office.'The reference to Rule 45 was effectively contained in the statute prior to the 1952 Act. Not only did the amending language alter this reference, but it also referred for the first time to the 'provisions of the . . . Rules . . . relating to . . . the production of documents and things.' These exact words were used in the title of Rule 34 as it existed in 1952. The title to this Rule, as amended in 1946,[3] read as follows in 1952:
 
 
 37
 'Rule 34. Discovery and Production of Documents and Things for Inspection, Copying, or Photographing.'
 
 
 38
 As opposed to this title, the titles and subtitles of Rule 45 read as follows:
 
 
 39
 'Rule 45.
 
 
 40
 'Subpoena
 
 
 41
 '(a) For Attendance of Witnesses; Form; Issuance.
 
 
 42
 . . . .ten
 
 
 43
 '(b) For Production of Documentary Evidence.
 
 
 44
 . . . .odu
 
 
 45
 '(c) Service.
 
 
 46
 . . . .e.
 
 
 47
 '(d) Subpoena for Taking Depositions; Place of Examination.
 
 
 48
 . . . .na
 
 
 49
 '(e) Subpoena for a Hearing or Trial.
 
 
 50
 . . . .na
 
 
 51
 '(f) Contempt.
 
 
 52
 . . . .'t.
 
 
 53
 According to the plain meaning of the words used in (a) 35 U.S.C. 24, as amended in 1952, and (b) Rules 34 and 45, it seems clear that the words 'the Federal Rules of Civil Procedure' referred at least to Rule 34 as well as Rule 45. Otherwise, Congress could have retained the wording of 35 U.S.C. 54, merely substituting 'Federal Rule of Civil Procedure 45' for 'section 647 of Title 28.'[4]
 
 A. Frilette Case
 
 54
 In the Frilette case, during the preparations-for-testimony stage, prior to the commencement of the junior party Frilette's taking of testimony, Frilette filed a motion for discovery with the Board of Patent Interferences under Patent Office Rule 287(c), seeking certain information from Kimberlin. The Board of Patent Interferences denied the motion in a decision dated January 17, 1973, on the ground, inter alia, that the motion under 287(c) for additional discovery was premature 'since the time for service of documents and lists by Kimberlin . . ., the senior party, under Rule 287(a) has not closed and in view of the fact that it is therefore not known what documents and lists will be served . . ..'
 
 
 55
 Frilette also filed in the district court a motion to compel discovery under F.R.Civ.P. 37. In this motion, Frilette sought substantially the same discovery sought in the Patent Office, and requested an order compelling Kimberlin (1) to designate certain witnesses under F.R.Civ.P. 30(b)(6), (2) to answer certain interrogatories under F.R.Civ.P. 33, (3) to produce documents under F.R.Civ.P. 34, and (4) to admit certain facts under F.R.Civ.P. 36. A hearing on this motion was held before the district court, and, in an Opinion and Order dated May 15, 1973, the district court denied the motion. See Frilette v. Kimberlin, 358 F.Supp. 493 (D.Del.1973).
 
 
 56
 Frilette appeals from this denial of his motion.
 
 
 57
 The district court, in denying Frilette's motion to compel discovery, stated that the law as previously enunciated should no longer prevail because of the recent occurrence of two events: (1) the 1970 amendments to the Federal Rules of Civil Procedure which eliminated the good cause requirement as a prerequisite to Rule 34 document requests, and (2) the introduction by the Patent Office in June 1971 of the discovery provisions of Rule 287.
 
 
 58
 With respect to the 1970 amendments, the district court stated:
 
 
 59
 'Since the good cause requirement was apparently a factor in the federal courts' willingness to interpret 24 broadly, this Court is unable to conclude that 24 would have received a similar construction absent this safeguard. In such circumstances, it would not be unreasonable to continue to impose a good cause requirement under 35 U.S.C. 24.'
 
 
 60
 358 F.Supp. at 495-496. The district court went on to conclude that Frilette had not made a showing of good cause.
 
 
 61
 With respect to the recent introduction by the Patent Office of the discovery provisions of Rule 287, the district court stated that the absence of any discovery mechanism in the Patent Office prior to the promulgation of Rule 287 had been a significant factor in the federal courts' willingness to give 35 U.S.C. 24 a broad reading and to assume jurisdiction over discovery matters in interference proceedings. The district court felt that the introduction of the Patent Office discovery rules 'appear(s) to reflect the Patent Office's efforts to construct a discovery process which embodies the good cause requirement cited' in such cases as In re Natta, supra, and that Rule 287 might, therefore, require a redefinition of the federal courts' role in granting discovery in interference proceedings under 35 U.S.C. 24.
 
 
 62
 Based upon the above two considerations, the district court announced the following limitation on its role in interference discovery cases arising under 35 U.S.C. 24:
 
 
 63
 'While a federal court cannot abrogate its responsibility to assume jurisdiction under 35 U.S.C. 24, it must not blind itself to the ancillary, supportive role, it is designed to fulfill in interference matters. Until the Patent Office has had a reasonable opportunity to implement its discovery procedures and has demonstrated the parameters within which they will be administered, the courts are in no position to evaluate the potential efficacy of the procedures and the possibility that the courts will be able to assume a secondary role in discovery. In light of these general considerations, the Court must scrutinize Frilette's particular discovery requests in light of the issues before the Patent Office.'
 
 
 64
 358 F.Supp. at 496.
 
 
 65
 Frilette's primary contention on appeal is that, in light of the elimination by Congress in 1970 of the good cause requirement as a prerequisite to the grant of discovery under F.R.Civ.P. 34, the district court erred in judicially imposing a good cause requirement upon a party seeking discovery in an interference proceeding.
 
 
 66
 Specifically, Frilette claims that the district court's resurrection of the good cause requirement, on the ground that 35 U.S.C. 24 would have received a different construction by this court in Natta and other courts absent the good cause safeguard, has no basis in logic. First, Frilette notes that good cause is not, and never was, a requirement of any of the discovery rules except F.R.Civ.P. 34, and that courts have granted discovery in patent interferences under such other discovery rules without regard to good cause. See, e.g., Babcock & Wilcox Co. v. Foster Wheeler Corp., 54 F.R.D. 474 (D.N.J.1971) (motion to compel discovery under F.R.Civ.P. 37). Secondly, Frilette contends that the reasons for the 1970 amendment of F.R.Civ.P. 34, eliminating the good cause requirement, apply with equal force whether the parties seeking discovery are parties to a Patent Office interference or litigants in a different type of civil proceeding.[5] Finally, Frilette contends that the application of a different standard to the scope of discovery under the Federal Rules when the interference is pending before the Patent Office would not only impair the Patent Office's quest for truth but also necessarily increase the number of suits in the district courts under 35 U.S.C. 146 after decisions of the Board of Patent Interferences since, as the district court in the instant case noted, 'on appeal to the district court from a decision by the Board of Patent Interferences, the movant may be entitled to broad discovery under the Federal Rules without any showing of good cause or other particular reason for the requested discovery.' 358 F.Supp. at 498 n. 7. Thus, Frilette argues, losing parties in interference proceedings are more inclined to bring a civil action under 35 U.S.C. 146 if broader discovery is available in such civil action.
 
 
 67
 I agree with these contentions and accordingly would hold that the district court erred in judicially imposing a good cause requirement upon discovery in patent interferences under 35 U.S.C. 24. In 1970, Congress saw fit to permit the removal of the good cause requirement from the Federal Rules of Civil Procedure to become effective, and I perceive no logical reason why courts should carve an exception to such legislative action with respect to patent interferences. The district court, in resolving Frilette's request for discovery in the instant case, should have considered the same factors that it would consider in resolving a discovery request in any other civil proceeding.
 
 
 68
 One further aspect of this case requires discussion. As stated above, the district court, in addition to requiring Frilette to show good cause, stated that the Patent Office's recent promulgation of Rule 287 rendered distinguishable the Natta case and other cases which provided for broad discovery in the federal courts under 35 U.S.C. 24. Reasoning that the presence of Rule 287 might require a restructuring of the federal courts' role under 35 U.S.C. 24 and enable federal courts to assume a more limited, secondary role in interference discovery matters, the district court proceeded to 'scrutinize Frilette's particular discovery requests in light of the issues before the Patent Office.' 358 F.Supp. at 496. The district court then noted, in denying Frilette's motion, 'that under Rule 287(a) and (c), Frilette's discovery directed to Kimberlin's case in chief is premature.' Id. at 498. The district court did not make clear, however, whether its denial of Frilette's motion was based solely upon Frilette's inability to show good cause or also upon the Patent Office's prior denial of Frilette's motion as premature under Rule 287(a) and (c). Because of this uncertainty, I would remand to the district court for reconsideration of Frilette's discovery motion and, if necessary, clarification of its reasons for denial of such motion, in light of my belief that the district court erred in requiring Frilette to show good cause.
 
 
 69
 Accordingly, I would not attempt to resolve definitively in this appeal the issue of what effect Patent Office Rule 287 has upon the availability of discovery under 35 U.S.C. 24, particularly where the Board of Patent Interferences has denied a motion under Patent Office Rule 287 requesting the same discovery.[6] I have, however, substantial doubt as to whether the presence of Rule 287 compels a narrowing of the federal court's broad role in interference discovery proceedings under 35 U.S.C. 24. Several factors underlie this doubt. First, on its face, Rule 287 provides for only limited discovery in the Patent Office. Under Rule 287(a), discovery is available prior to the testimony period solely for the purpose of determining the matters upon which the opponent will rely, not those which might build an affirmative case for the discovering party.[7] Therefore, Rule 287 does not provide for discovery as broad in scope as the discovery which may be provided by a district court under 24. Secondly, Congress, presumably well aware of the conflict between the availability of broad discovery under 35 U.S.C. 24 and the traditional order of proof procedure of interference proceedings,[8] repeatedly refused to amend 35 U.S.C. 24 to eliminate this conflict prior to the adoption of Rule 287 in June 1971.[9]
 
 
 70
 Finally, the language of 35 U.S.C. 24 is mandatory, and it is questionable whether the Patent Office's promulgation of a narrow discovery rule can restrict the force and effect of such language. I believe that the district court should take the above factors into account in reconsidering Frilette's motion.
 
 
 71
 As a final matter, I reject the contention of appellee Kimberlin that the district court order denying Frilette's discovery motion was conditional rather then final, and that it was, therefore, not an appealable final order under 28 U.S.C. 1291. See Babcock & Wilcox Co. v. Foster Wheeler Corp., 415 F.2d 777 (3d Cir. 1969). In my view, the district court order was intended to be a final disposition of Frilette's motion for discovery.
 
 
 72
 I would vacate the May 15, 1973, district court order and remand the case to the district court for proceedings consistent with the foregoing views.
 
 B. Duffy Case
 
 73
 As stated in Judge Adams' opinion, I agree that the district court did not abuse its discretion in allowing Duffy to proceed with discovery relating to whether Barnes and Preziosi filed their patent application fraudulently.
 
 
 74
 Circuit Judge ADAMS concurs in the statutory analysis set forth in this opinion and in the application of that analysis to the Frilette case.
 
 ADAMS, Circuit Judge (dissenting):
 
 75
 The principal issue addressed on the rehearing in banc is whether we should now overrule In re Natta,[1] which decided that 35 U.S.C. 24[2] permits the parties to an interference proceeding pending in the Patent Office to obtain discovery in the district courts under the provisions of the Federal Rules of Civil Procedure.
 
 
 76
 I concur in Judge Van Dusen's careful analysis of the language and history of section 24, which indicates that it was reasonable for this Court to conclude in Natta that the reference in section 24 to the Federal Rules was intended to include the broad discovery procedures therein. I have some additional observations, however, regarding the respect a court should accord its earlier decisions, particularly a decision such as Natta, and regarding the practical effects that the holding announced today by the majority will have on interference litigation in the future.
 
 I.
 
 77
 Section 24 was enacted in 1952. In 1968 this Court, in Natta, interpreted the intent of Congress, as expressed in the statute, as follows: 'This statute manifests a clear congressional intent to make available to parties to patent interferences the broad discovery provisions of the Federal Rules of Civil Procedure.'[3] The Natta Court's construction of section 24 conformed to prior interpretations by the Courts of Appeals for the Fifth[4] and Seventh[5] Circuits and by the District Courts for the Western District of Michigan[6] and the Northern District of Oklahoma.[7] Subsequent to our decision in Natta, the same interpretation has been adopted by the Courts of Appeals for the Tenth[8] and Second[9] Circuits, and by the District Courts for the District of Columbia[10] and the District of Massachusetts.[11] And this Court has applied its Natta interpretation of the statute on a number of occasions.[12] Indeed, no court of appeals has adopted a narrower reading of section 24 than that set forth in Natta.
 
 
 78
 The parties to these appeals who would have us upset our decision in Natta contend that the adoption of discovery procedures by the Patent Office in 1971 necessitates a reversal of this Court's interpretation of a congressional statute enacted in 1952.
 
 II.
 
 79
 The basic issue before this Court is whether an intermediate federal appellate court that has for approximately seven years adhered to one interpretation of the congressional intent embodied in section 24 may properly adopt a new interpretation of that statute because of the actions of an administrative agency and the Court's present views regarding the optimal allocation of jurisdiction in the federal system. I believe that an appropriate respect for the doctrine of stare decisis and for the separation of judicial and legislative functions should preclude such a result.
 
 
 80
 Stare decisis is one of the fundaments of our legal system. All lawyers, I suppose, are familiar with the classic words of Lord Coke, 'The knowne certaintie of the law is the safetie of all.'[13] Indeed, this aphorism is emblazoned on the walls of some of our most prestigious law schools.[14] The knowledge that a tenet of law, once decided, will remain constant permits the public to order their lives in reliance upon the prior decisions of the court.[15] In addition, observance of the precept of stare decisis advances the efficient administration of the judicial system. More significantly, a court's adherence to its earlier decisions encourages public confidence in the legal system by providing evidence that the court's holdings are the product of principled and carefully reasoned consideration and that the courts dispense equal treatment to all litigants similarly situated.[16] As Justice Brandeis observed, 'Stare decisis is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right . . .. This is commonly true even where the error is a matter of serious concern, provided correction can be had by legislation,'[17] as it can in the case before this Court.
 
 
 81
 The constitutional doctrine of the separation of powers lends added significance to the principle of stare decisis in the area of statutory construction. In deciding Natta in 1968, this Court was called upon to construe the congressional intent expressed in section 24. Our interpretation then became an integral part of the statute.[18] When a court has once determined the meaning Congress intended its words to carry, the court has completed its judicial function. Absent amendment, the legislative intent is not altered by time. Therefore, excepting extraordinary circumstances, a court, in altering its interpretation of the meaning to be derived from the words of the statute, encroaches on the power of Congress to enact or amend legislation.
 
 
 82
 Of course, when this Court first interprets a statute, then the statute becomes comes what this Court has said it is . . .. Such an initial interpretation is proper, and unavoidable . . .. The Court undertakes the task of interpretation, however, not because the Court has any special ability to fathom the intent of Congress, but rather because interpretation is unavoidable in the decision of the case before it. When the law has been settled by an earlier case then any subsequent 'reinterpretation' of the statute is gratuitous and neither more nor less than an amendment: it is no different in effect from a judicial alteration of language that Congress itself placed in the statute.[19]
 
 
 83
 If in construing a statute a court has misapprehended the intention of Congress, the error is susceptible to correction by the legislature. If this Court has failed to perceive the intent of Congress, or has interpreted a statute in such a manner as to thwart the legislative purpose, Congress may change it. 'The lessons of experience are not learned by judges alone.'[20] Statutory constructions are, in this respect, dissimilar from constitutional precedents, where the only alternative to overruling a judicial interpretation is the cumbersome procedure of constitutional amendment. Courts should therefore exercise greater restraint in overruling statutory as distinguished from constitutional precedents.[21]
 
 
 84
 Additionally, when, as in the case before us, the allegedly erroneous statutory interpretation has been made by a court of appeals, Supreme Court review provides an additional remedy for an unsound construction.
 
 
 85
 A federal court should be particularly circumspect in setting aside its construction of a statutory provision which is still under review by Congress. In the interim since our decision in Natta, numerous unsuccessful attempts have been made in Congress to amend section 24. For example, prior to the Patent Office's promulgation of Rule 287, bills were introduced in 1968,[22] 1969[23] and 1971[24] seeking to amend the final sentence of the first paragraph of section 24 so as to provide that 'the provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and the production of documents and things shall apply to contested cases in the Patent Office insofar as consistent with (Patent Office) regulations.' Other legislation introduced during the same period, however, proposed no changes in section 24.[25] Bills introduced since the promulgation of Rule 287 have offered a number of resolutions of the dual system of discovery available in the Patent Office and in the district courts. S. 2930[26] and H.R. 11868[27] -- like the bills introduced in 1968, 1969 and 1971-- provide that the Federal Rules of Civil Procedure should apply to cases in the Patent Office only 'insofar as consistent with Patent Office regulations established under section 23 of this title.' On the other hand, S. 1321[28] and S. 2504,[29] although limiting the district court's jurisdiction in Patent Office cases, would require the Patent Office to provide discovery procedures substantially the same as those available in the district courts under Natta.
 
 
 86
 These various unsuccessful attempts to modify section 24 provide no clear signal that in Natta this Court erred in construing the legislative intent underlying that provision. Further, since some of these proposals are still under consideration by Congress, we should be wary of infringing on the authority of the legislative branch by seeking to accomplish by judicial fiat what Congress has contemplated doing, but so far has declined to do, through amendatory legislation.[30]
 
 III.
 
 87
 The social benefits derived from adherence to the doctrine of stare decisis and from the separation of the judicial and legislative powers mandate that a court cast aside its prior interpretation of statutory language only in extraordinary circumstances. In the present case, Judge Van Dusen's comprehensive discussion of the legislative history demonstrates that the Natta Court's interpretation was certainly not unreasonable. In addition, the Natta opinion has not been undercut by subsequent decisions. Nor does Natta conflict with any previous, overriding, more fundamental policy of federal law.
 
 
 88
 The majority opinion in this case offers two justifications for overruling Natta. The first is the Patent Office's adoption of a rule providing limited discovery in the Patent Office. Nothing in section 24, however, makes the district court's jurisdiction dependent on the failure of the Patent Office to adopt discovery procedures. Moreover, the promulgation of a rule by an administrative agency subsequent to the enactment of section 24 could hardly alter the legislative intent embodied in the statute. Judicial estimation of the legislative purpose should not turn on the vagaries of an administrative agency in first rejecting, then accepting, and possibly again rejecting a procedural device. In addition, the statutory grant of authority under which the Patent Office adopted Rule 287[31] predates this Court's decision in Natta. Recent recognition by the Patent Office of the practice of discovery, therefore, would not seem to justify a reversal of this Court's established reading of section 24.
 
 
 89
 The second justification advanced by the majority for redefining the congressional will underlying section 24 is what the majority regards as an undesirable burden on judicial administration brought about by broader discovery. The majority asserts that allowing Patent Office litigants discovery in the district courts increases the caseload in those courts. Also, since any discovery order becomes an appealable decision,[32] the courts of appeals are confronted with a spate of questions which in ordinary federal litigation would be considered interlocutory and therefore not subject to appeal. Furthermore, the majority states that there is no centralized control over the discovery proceedings, since an independent action may be brought in each district in which discoverable evidence is located. Concededly the above consequences flow in some degree from section 24, as interpreted in Natta. But jurisdiction in the federal courts is controlled by Congress, not by the judiciary. Courts may not refuse to exercise jurisdiction granted by statute even though such exercise might place additional burdens on the courts, and even though the courts may not agree with the procedures thus sanctioned.
 
 
 90
 Assuming, arguendo, that the inefficiencies generated by the Natta construction of section 24 exist and that they are as pernicious as they are portrayed by the majority, they may be remedied by Congress. The judiciary is not alone in possessing the insight to recognize impediments to efficient judicial administration. Also, the judicial branch is not as well equipped as the legislature to investigate the problem and to evaluate the potential resolutions.
 
 
 91
 The majority has apparently concluded that since some modicum of discovery is now available in the administrative agency, the federal judicial system would be operated most efficiently by removing, for all practical purposes, patent discovery proceedings from the district courts. But the majority's conclusion rests solely on its own theorization. The Court has no empirical evidence regarding the extent of the saving of judicial resources which could be achieved without discarding Natta. For instance, the courts may be able to reduce the volume of patent discovery litigation by clearly indicating that in the exercise of their discretion the district courts will refuse to grant discovery which is or will be available in the Patent Office unless the party seeking discovery can show substantial need for the discovery in the district court rather than in the Patent Office.
 
 
 92
 Nor does the record contain any evidence whether, accepting the Natta construction, discovery litigation could be reduced by imposing costs or other sanctions on recalcitrant parties. In addition, litigants dissatisfied with the outcome of interference litigation in the Patent Office may initiate a trial de novo in the district court,[33] where the full discovery provisions of the Federal Rules will, of course, be applicable. There is, however, no data available regarding the relative impact the majority's holding will have in reducing the judicial resources devoted to discovery in Patent Office cases as compared with the increase in district court time which will be expended on the de novo trial of interferences. Also, this Court does not possess the means to assess the extent to which this construction of the discovery available will alter the outcome of interference litigation.
 
 
 93
 Thus, neither the adoption of discovery procedures by the Patent Office nor the prospect of relief from the burden placed on the courts by the necessity of deciding discovery issues in administrative interference proceedings would appear to vindicate a reconsideration of the interpretation of section 24 that until today had been accepted by every Court of Appeals that had addressed the subject.
 
 IV.
 
 94
 Even were the proposed justifications for reconsidering Natta more substantial, I would pause before repudiating that decision because of the effect the majority's ruling will have on the availability of discovery in proceedings in the Patent Office. The essence of the discovery provided by Rule 287(a) is that each party must provide his adversary with a copy of each document in his possession on which he intends to rely in presenting his case, and reasonable acess to each 'thing' on which he intends to rely, as well as a list of the witnesses he intends to call. Under 287(c) during the period for the preparation of testimony or thereafter a party may, upon a showing 'that the interest of justice so requires,' obtain additional discovery within the scope of the discovery rules of the Federal Rules of Civil Procedure, if the materials sought are within the control of the adverse party.
 
 
 95
 These Patent Office discovery procedures are in several notable respects more restricted than those available under the Federal Rules. First, the automatic discovery-- discovery of right-- applies only to that evidence on which the movant's adversary intends to rely. There is no discovery of materials which may bolster the movant's own case except at the discretion of the Board of Patent Interferences. In contrast, the Federal Rules make discovery of both supportive and detrimental evidence equally available.[34]
 
 
 96
 Second, in order to obtain discretionary discovery a party must demonstrate that 'the interest of justice . . . requires' that he have access to the material. On the other hand, the Federal Rules require only that the material sought be 'reasonably calculated to lead to the discovery of admissible evidence.'[35] The standard that 'the interest of justice so requires' appears to be a more demanding test than the requirement of 'good cause' formerly contained in Rule 34,[36] and even stricter than the requisite showing of 'substantial need' for the disclosure of 'work product.'[37]
 
 
 97
 Third, the scope of the materials which Rule 287 authorizes the Board of Patent Interferences to order divulged may not be as broad as that available under section 24, as interpreted by Natta. It is doubtful whether Rule 287 provides for discovery relating to issues beyond the merits of the interference proceeding itself. In Duffy v. Barnes, for instance, the district court concluded that Rule 287 did not authorize discovery pertaining to existence of fraud in the filing of a patent application since a motion to have the application stricken pursuant to Patent Office Rule 56[38] is not within the ambit of an interference proceeding. At least under the trial judge's view of the scope of Rule 287, therefore, the majority's holding today will foreclose a party from obtaining discovery regarding the existence of fraud in the filing of a patent application.
 
 
 98
 Fourth, Rule 287 is more restrictive than the Federal Rules as to the time when discovery may be obtained. Rule 287(a) does not require the junior party to furnish the senior party with the specified discovery materials until after the close of the period set by the Board of Interferences for the consideration of motions. Then the senior party need not provide his materials to the junior party until the junior party has completed taking his testimony-in-chief.
 
 
 99
 It is obvious, therefore, that the non-discretionary discovery under 287(a) will be of no use to the junior party in preparing his case-in-chief. Also, discovery may not be obtained under 287(c) until after the close of the motions period. Under the majority's reading of section 24, therefore, which would confine the parties to discovery through the administrative proceeding, there is no device by which a litigant may obtain discovery of evidence which is expected to become unavailable before the commencement of discovery in the Patent Office under Rule 287. Nor may a party obtain discovery earlier than 287 allows even though such accelerated discovery would materially accelerate termination of the litigation.
 
 
 100
 Fifth, Rule 287 provides only for discovery of information that in under the control of one of the parties. Thus the majority's reading of section 24 deprives litigants of the benefit of pretrial disclosure of relevant information that may be in the hands of non-parties.
 
 
 101
 Aside from the much narrower scope given discovery by the majority's ruling, another serious defect is apparent. In overruling Natta, the majority rejects the construction of section 24 which, as previously noted, has been accepted by every court of appeals that has considered the question. Therefore the extent of discovery available to Patent Office litigants will hereafter depend upon the fortuity of the location of the evidence sought to be discovered, since only within the Third Circuit will discovery be confined to the limited discovery available administratively. This lack of homogeneity among the courts of appeal may result in serious injustice where disclosure of one party's evidence is controlled by the law of this Circuit, while divulgence of that of the adversary party is governed by the decisions of another Circuit.
 
 V.
 
 102
 Therefore, on the basis of the considerations set forth above and the statutory interpretation explicated by Judge Van Dusen, I would adhere to the interpretation of section 24 propounded in Natta. There remains, therefore, only the application of that construction of the statute to the facts of these cases.
 
 
 103
 I concur in Judge Van Dusen's discussion of the proper resolution of Frilette v. Kimberlin. In view of the majority's holding today, an extensive discussion of how I would resolve Duffy under this Court's previous decision in Natta would serve no useful purpose. Suffice it to say therefore, that I find no abuse of discretion[39] by the district court in allowing Duffy to proceed with discovery related to whether Barnes and Preziosi filed their patent application fraudulently.[40]
 
 
 104
 Circuit Judge VAN DUSEN concurs in this opinion.
 
 
 105
 * Though Judge Hunter was not at oral argument, counsel, by consent, agreed to his participation in the decision and he reviewed the record of oral argument.
 
 
 
 [1]
 The motion sought to amend the original application for the patent, which had listed Barnes and Preziosi as co-inventors, by deleting the name of Barnes. The purpose of the motion was to make the application for the patent consistent with the preliminary statement of the junior party which had shown Preziosi as the sole inventor
 1A The court's order was handed down on July 24, 1973, and an appeal was promptly filed in this court at No. 73-1635. A request for stay was filed on July 25, 1973 and denied on July 30, 1973. A second appeal was filed from the district court's order of August 6, 1973 at No. 73-1695 together with a motion for stay and for clarification which was denied on August 22, 1973. Yet a third motion was filed in this court on October 12, 1973, seeking impoundment of or prohibition against the use of evidence obtained by discovery. After argument, the motion was denied. Cross motions by Duffy for attorneys' fees and dismissal of the appeals were referred to the panel to which the appeals were to be assigned.
 
 
 [2]
 Pursuant to the authority granted by 35 U.S.C. 23, Patent Office Rule 287, 37 C.F.R. 1.287 was enacted effective June 11, 1971. It provides as follows:
 '287. Discovery.
 '(a)(1) Each party who expects to take testimony must serve on each opposing party who requests service the following:
 '(i) A copy of each document in his possession, custody, or control and upon which he intends to rely,
 '(ii) A list of and a proffer of reasonable access to things in his possession, custody, or control and upon which he intends to rely, and
 '(iii) A list giving the names and addresses of all persons whom he intends to call as witnesses and indicating the relationships of each person to the invention in issue.
 '(2) Dates for compliance with subparagraph (1) of this paragraph will be set in accordance with the follwoing:
 '(i) The date by which all parties may request service shall be not less than 10 days from the date of the order setting testimony times;
 '(ii) The date for service by all junior parties shall be not less than 30 days from the date of the order setting such times;
 '(iii) The date for service by the senior party shall be not less than 10 days from the date set for the close of testimony in chief of all junior parties.
 '(3) Where more than two parties are involved and one of the junior parties is not entitled to take testimony as to a more senior party, the requirements of subparagraphs (1) and (2) of this paragraph shall not be applicable as between such parties.
 '(b) The provisions of paragraph (a) of this rule are without prejudice to the right of a party, where appropriate, to obtain production of documents or things during cross-examination of an opponent's witness or during his own period for rebuttal testimony.
 '(c) Upon motion (rule 243) brought by a party during the period for preparation for testimony, or thereafter as authorized under rule 245, and upon a showing that the interest of justice so requires, the Board of Patent Interferences may order additional discovery as to matters under the control of a party within the scope of the discovery rules of the Federal Rules of Civil Procedure, specifying the terms and conditions of such additional discovery. An order by the Board granting or denying a motion under this paragraph shall not be subject to review prior to a decision awarding priority.
 '(d)(1) A party will not be permitted to rely on any document or thing in his possession, custody, or control, or on any witness, not listed and served by that party as required by paragraph (a) of this rule, except upon a promptly filed motion accompanied by the proposed additional documents or lists together with a showing of sufficient cause as to why they were not served by the date set pursuant to paragraph (a) of this rule.
 '(2) Any failrue to comply with an order under the provisions of paragraph (c) of this rule may be considered by the Board of Patent Interferences as basis for applying appropriate restrictions against the party failing to comply, for holding certain facts to have been established, and in an appropriate case for awarding priority against him, or for taking such other action as may be deemed appropriate.
 '(e) The parties may be agreement among themselves modify any of the foregoing requirements consistent with the schedule of times for taking testimony and filing the record. In the absence of such agreement, discovery will not be permitted prior to the period set for the preparation for testimony. (Added June 11, 1971).'
 
 
 [3]
 Frilette v. Kimberlin, 358 F.Supp. 493 (D.C.Del.1973). Del. 1373)
 
 
 [4]
 The court held that a motion under Fed.R.Civ.P. 34 to produce documents by a party under cross examination would be allowed since the same result could be obtained by a subpoena duces tecum. The opinion did not purport to include all discovery rules
 
 
 [5]
 A motion had been made by a senior party under Rule 34 for documents to use in connection with a cross examination of junior party employees on rebuttal testimony. Presentation of testimony was in process though the witness was not yet on the stand. Relying on Gladrow v. Weisz, supra, the court ordered production under Rule 34. Again, it seems that the material could have been secured by a subpoena duces tecum
 
 
 [6]
 In this case a subpoena had been issued. By way of dictum and without any review of the history of 35 U.S.C. 24, the district court held that Fed.R.Civ.P. 26, 30, 34, and 45 were applicable. Subpoenas were ordered quashed because good cause had not been shown. Apparently, the subpoenas were issued in connection with presentation of testimony. However, in the later case of Korman v. Nobile, 133 U.S.P.Q. 178 (W.D.Mich.1962), the same judge in passing upon another motion in the same interference proceeding said that the broad provision of the rules relating generally to discovery did not apply
 
 
 [7]
 The opinion contained the statement that 'This statute manifests a clear congressional intent to make available to parties to patent interferences the broad discovery provisions of the Federal Rules of Civil Procedure.' 388 F.2d at 217
 In Sears, Discovery in Interferences, 53 Journal of the Patent Office Society 693 (1971), the author, one of the counsel appearing in the Natta cases, stated that 'discovery' in proceedings before the adoption of the Federal Rules of Civil Procedure in 1937 was secured in connection with testimony to be presented as evidence at the trial. Since this evidence was in deposition form following the old equity practice, extremely wide latitude was extended to the concept of relevancy and materiality because the parties would not know in advance what rulings would be made at trial. This was a practical approach designed to avoid a remand for the taking of further testimony made necessary by unanticipated rulings at trial or on appeal and, of course, allowed 'discovery' of information arguably irrelevant and immaterial which led to other evidence of more value.
 As the author states candidly, 'Perhaps unfortunately, some practitioners were motivated to go much further than the Natta cases did, or were ever intended to go, and to seek so-called 'pretrial discovery' during the interference motion period regardless of their ultimate entitlement to present evidence in the interference.'
 In both cases at bar, discovery was sought in advance of the time set either for testimony or discovery as permitted by the new Patent Office rules. In Duffy, application was not made to the Patent Office, and in Frilette, application had been made and refused as premature.
 
 
 [8]
 The Natta case discussed here was but one of many growing out of discovery in Patent Interference 89,634. Not only was this circuit involved, but trial and appellate courts in other parts of the country were struggling with various aspects of discovery in that same interference proceeding, often at the same time. The following is a list, not warranted to be complete, of published opinions on various rulings: Montecatini Edison S.p.A. v. duPont de Nemours & Co., 434 F.2d 70 (3d Cir. 1970); Natta v. Zletz, 418 F.2d 633 (7th Cir. 1969); In re Natta, 410 F.2d 187 (3d Cir. 1969), cert. denied, 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87; Natta v. Zletz, 405 F.2d 99 (7th Cir. 1968), cert. denied, 395 U.S. 909, 89 S.Ct. 1753, 23 L.Ed.2d 223; Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968); In re Natta, 388 F.2d 215 (3d Cir. 1968); Natta v. Zletz, 379 F.2d 615 (7th Cir. 1967); In re Hogan, 309 F.Supp. 945 (D.C.Del.1970); In re Natta, 48 F.R.D. 319 (D.C.Del.1969); Hogan v. Zletz, 43 F.R.D. 308 (N.D.Okla.1967), modifying Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968); In re Natta, 264 F.Supp. 734 (D.C.Del.1967), aff'd 388 F.2d 215 (3d Cir. 1968); and In re Natta, 259 F.Supp. 922 (D.C.Del.1966), aff'd 388 F.2d 215 (3d Cir. 1968)
 
 
 [9]
 Natta v. Zletz, 379 F.2d 615, 618 (7th Cir. 1967)
 
 
 [10]
 Even in the most complex antitrust litigation filed in the district court, the overwhelming majority of the matters similar to those appealed in the various patent interference cases would have been considered interlocutory and would have been concluded by the trial judge. Judge Coolahan commented on another unsatisfactory aspect in Babcock and Wilcox Co. v. Foster Wheeler Corp., 173 U.S.P.Q. 480, 481 (D.C.N.J.1972), 'A more undesirable plan for litigation could hardly be imagined, than that by which counsel must commute, often frantically and behind schedule, between the Patent Office and the federal district court in a time-consuming effort to exhaust discovery rights at the same time the interference trial has begun. When the district court decision is appealed, as it inevitably is, more delay occurs
 'The halving of legal decision-making between the Patent Office and the district courts had created friction between them.'
 
 
 [11]
 Cf. Dunner, Gambrell, and Kayton, 3 Patent Law Perspectives, 1970 Developments C.4
 
 
 [12]
 See Sears, Discovery in interferences, supra at 701
 
 
 [13]
 The authors of Patent Law Perspectives argue that it might be better to transfer all the interference cases to the courts without going through proceedings in the Patent Office, unless adequate discovery means in district courts are made available. See 3 Patent Law Perspectives, 1973 Developments C.4. Discovery in the Patent Office itself, however, seems to offer a more acceptable solution to the problem
 
 
 [14]
 35 U.S.C. 23 was passed by Congress on the same day as Section 24 and is part of the same statutory package. It defies reasonable principles of statutory construction to hold that Congress specifically granted the Patent Office authority to enact rules of discovery under Section 23, while at the same time only inferentially extending the broad gambit of the Federal Rules of Civil Procedure on discovery to the courts in interference cases under Section 24
 
 
 [15]
 Judge Seitz's opinion in Natta reviews in detail the history of Section 24 and comes to a different conclusion than Judge Van Dusen's dissent in this case. It is because the majority believes that Judge Seitz correctly analyzed the statute that we now overrule Natta. The undesirable results of the Natta doctrine supply a background for reconsideration, not the reason for rejection of that case. If Natta had correctly interpreted 24, the side effects would be worthy of note, but not grounds for disavowal of jurisdiction
 
 
 [16]
 S. 1321 and S. 2504 would give authority to the Patent Office to issue subpoenas and require the Commissioner of Patents to establish rules for discovery similar to those of the Federal Rules of Civil Procedure, S. 2930 requires issuances of subpoenas by the clerk of the District Court and provides that the Federal Rules of Civil Procedure as applicable to discovery shall apply
 
 
 [1]
 I do not disagree with the majority opinion's statement that the language of the majority in In re Natta, 388 F.2d 215 (3d Cir. 1968), gave an unjustifiably broad interpretation to the 1952 amendment to 35 U.S.C. 24
 
 
 [2]
 The words 'F.R.Civ.P. 45' had been substituted for 'section 647 of Title 28' by the terms of 28 U.S.C. 723b and 723c (Act of June 19, 1934, Ch. 651, 48 Stat. 1064, which was amended by Act of June 25, 1948, Ch. 646, 62 Stat. 961), which terms are now contained in 28 U.S.C. 2072 as follows: 'All laws in conflict with such rules shall be of no further force or effect after such rules shall have taken effect.' Title 28, section 647, was repealed when F.R.Civ.P. 45 became effective in April 1938. See U.S.C.A. Tables, I, Revised Titles, at 43
 
 
 [3]
 See page 13 of House Document 473, 80th Cong., 1st Sess
 
 
 [4]
 See note 2 above. Congress might have hesitated to cite in 24 a single rule of procedure, since the rules are not statutes and thus not subject to the closest congressional control over content and wording. Nevertheless, no reason appears why Congress would have failed to specify the provisions of the Rules of Civil Procedure relating to subpoenas had the intent been to limit the reference to Rule 45. Also, the legislative history of the 1952 Act shows that Congress changed the language of 35 U.S.C. 24 as it first appeared in a draft bill to provide that 'the provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent Office.' H.R.9133 was introduced in the 81st Congress on July 17, 1950, and this bill was reintroduced in revised form in the 82nd Congress as H.R.3760, which became the Patent Act of July 19, 1952 (P.L. 593, 82d Cong., 2d Sess., c. 950; 66 Stat. 792). H.R.9133 contained this language in the last half of the last sentence of the first paragraph of 35 U.S.C. 24:
 '. . . and the provisions of the Federal Rules of Civil Procedure relating to the issuance of subpoenas duces tecum shall apply to contested cases in the Patent Office.'
 When this bill was reintroduced in revised form in the 82nd Congress as H.R.3760, the last sentence of the first paragraph of proposed 35 U.S.C. 24 had been changed to read:
 'The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and the production of documents and things shall apply to contested cases in the Patent Office.'
 The result of the many suggestions from the Patent Bar and the public concerning H.R.9133 and the reintroduction of this bill in revised form in the 82nd Congress as H.R.3760 is contained in House Report No. 1923, May 12, 1952. This history reveals the substitution for the words 'the issuance of subpoenas duces tecum' of the words 'the attendance of witnesses and the production of documents and things,' which is the language appearing in the 1952 Patent Act.
 
 
 [5]
 The Advisory Committee's Note concerning the 1970 changes in F.R.Civ.P. 34 stated:
 'Good cause is eliminated becuase it has furnished an uncertain and erratic protection to the parties from whom production is sought and is now rendered unnecessary by virtue of the more specific provisions added to Rule 26(b) relating to materials assembled in preparation for trial and to experts retained or consulted by parties.'
 See Moore's Federal Practice, Vol. 4A, P34.01(8) (2d ed. 1972).
 
 
 [6]
 I recognize that in many cases it will be desirable for the parties to seek discovery first under Rule 287, but it is not necessary to make a definitive ruling on this point in this case. See Frilette v. Kimberlin, 358 F.Supp. 493-496 (D.Del.1973). See also note 9, infra. Also, I believe that any discovery ruling by the Patent Office is a factor to be considered by the district court in ruling on a motion such as that presented to the district court in this case. Cf. Laveson v. Trans World Airlines, 471 F.2d 76 (3d Cir. 1972); In re Natta, 264 F.Supp. 734, 738 (D.Del.1967)
 
 
 [7]
 While Patent Office Rule 287(c) provides that the Board of Patent Interferences may grant further discovery privileges at any time during the interference proceeding and to the full extent allowed under the Federal Rules, this power is discretionary and is not subject to interlocutory review. Moreover, Rule 287 applies only to the parties, so that no discovery of witnesses not under the control of the parties is available
 
 
 [8]
 The traditional procedure in the Patent Office is that the parties present evidence in the inverse order of their filing date. Allowing the senior party to present its affirmative case after the junior party presents its affirmative case is intended to preserve the senior party's presumption that he is the first inventor. The discovery mechanism of Rule 287 is apparently designed to preserve this traditional procedure of maintaining the order of presenting proof by the parties
 
 
 [9]
 Congress has on several occasions refused to enact bills which proposed a change in the language of 35 U.S.C. 24 to read as follows:
 '(a) The clerk of any United States Court for the district wherein testimony is to be taken in accordance with regulations established by the Commissioner for use in any contested case in the Patent Office shall, upon the application of any party thereto, issue a subpena for any witness residing or being within such district, commanding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpena. The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and the production of documents and things shall apply to contested cases in the Patent Office insofar as consistent with such regulations.'
 See S. 3892, 90th Cong.2d Sess. 24 (1968); S. 1246, 91st Cong. 1st Sess. 24 (1969); S. 643, 92nd Cong., 1st Sess. 24 (1971). These bills were introduced before the Patent Office adopted Rule 287. Other bills introduced before the adoption of Rule 287 produced no change in the language of 35 U.S.C. 24. See S. 1042, 90th Cong., 1st Sess. 24 (1967); S. 2597, 90th Cong., 1st Sess. 24 (1967); S. 2756, 91st Cong., 1st Sess. 24 (1969); cf. also S. 2504 (Committee Print), 93rd Cong., 1st Sess., A Bill for the general reform and modernization of the Patent Laws, title 35 of the United States Code at Section 23(b)(1), p. 10, Section 135(c)(3), p. 45, and Section 145 at p. 51.
 
 
 [1]
 388 F.2d 215 (3d Cir. 1968)
 
 
 [2]
 35 U.S.C. 24 (1954)
 
 
 [3]
 388 F.2d at 217
 
 
 [4]
 Gladrow v. Weisz, 354 F.2d 464 (5th Cir. 1965)
 
 
 [5]
 Natta v. Zletz, 379 F.2d 615 (7th Cir. 1967)
 
 
 [6]
 Korman v. Shull, 184 F.Supp. 928 (W.D.Mich.1960)
 
 
 [7]
 Hogan v. Zletz, 151 U.S.P.Q. 103 (D.C.N.D.Okla.1966). See also Ochsner v. Millis, 382 F.2d 618 (6th Cir. 1967)
 
 
 [8]
 Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968)
 
 
 [9]
 Babcock & Wilcox Co. v. Combustion Engineering, Inc., 430 F.2d 1177 (2d Cir. 1968), affirming per curiam 314 F.Supp. 235 (D.Conn.1968)
 
 
 [10]
 Lomex v. Kihara, 175 U.S.P.Q. 538 (D.C.D.C.1972)
 
 
 [11]
 Sheehan v. Doyle, 181 U.S.P.Q. 64 (D.Mass.1973)
 
 
 [12]
 See, e.g., Vogel v. Jones, 464 F.2d 573 (3d Cir. 1972); Babcock & Wilcox Co. v. Foster Wheeler Corp., 457 F.2d 1307 (3d Cir. 1972); Montecatini Edison S. p. A. v. E. I. duPont de Nemours, 434 F.2d 70 (3d Cir. 1970); Babcock & Wilcox Co. v. Foster Wheeler Corp., 432 F.2d 385 (3d Cir. 1970); Babcock & Wilcox Co. v. Foster Wheeler Corp., 415 F.2d 777 (3d Cir. 1969)
 
 
 [13]
 Coke, Institutes 395 (12th ed. 1738) (Epilogue to Pt. 1, Bk. 3)
 
 
 [14]
 Lord Coke's maxim is, for instance, inscribed along the ceiling of the grand Stairway of William Draper Lewis Hall of the University of Pennsylvania Law School
 
 
 [15]
 Hart & Sax, The Judicial Process 601
 
 
 [16]
 See Boys Markets v. Local 770, Retail Clerks Union, 398 U.S. 235, 257, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) (Black, dissenting); Helvering v. Hallock, 309 U.S. 106, 129, 60 S.Ct. 444, 84 L.Ed. 604 (1970) (dissenting opinion)
 
 
 [17]
 Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406, 52 S.Ct. 443, 447, 76 L.Ed. 815 (1932) (dissenting opinion)
 
 
 [18]
 Gulf, Colo. & Santa Fe Ry. v. Moser, 275 U.S. 133, 136, 48 S.Ct. 49, 72 L.Ed. 200 (1927)
 
 
 [19]
 Boys Markets, supra, 398 U.S. at 257, 90 S.Ct. at 1596. (Black, dissenting)
 
 
 [20]
 Swift & Co. v. Wickham, 382 U.S. 111, 134, 86 S.Ct. 258, 271, 15 L.Ed.2d 194 (Douglas, dissenting)
 
 
 [21]
 Boys Markets, supra, 398 U.S. at 259, 90 S.Ct. 1583 (Black, dissenting); United Gas Improvement Co. v. Continental Oil Co., 381 U.S. 392, 406, 85 S.Ct. 1517, 14 L.Ed.2d 466 (1965) (Douglas, dissenting); Burnet v. Coronado Oil & Gas Co., 285 U.S. 293, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, dissenting)
 
 
 [22]
 S. 3892, 90th Cong., 2d Sess. 24 (1968)
 
 
 [23]
 S. 1246, 91st Cong., 1st Sess. 24 (1969)
 
 
 [24]
 S. 643, 92nd Cong., 1st Sess. 24 (1971)
 
 
 [25]
 See S. 2756, 91st Cong., 1st Sess. 24 (1971). (1969). See also S. 1042, 90th Cong., 1st Sess. 24 (1967); S. 2597, 90th Cong., 1st Sess. 24 (1967). Both of the latter were proposed prior to our decision in Natta but subsequent to the earlier decisions, supra, to the same effect
 
 
 [26]
 S. 2930, 93d Cong., 1st Sess. 24 (1973)
 
 
 [27]
 H.R. 11868, 93d Cong., 1st Sess. 24 (1973)
 
 
 [28]
 S. 1321, 93d Cong., 1st Sess. 23 (1973):
 Sec. 23. Issue of Subpenas and Other Orders by Patent Office, Review and Enforcement.
 (a) Any party of record in any Patent Office proceeding may apply at any time to the primary examiner or other presiding official for subpenas or other orders to provide discovery, testimony, or evidence, and he shall issue the same ex parte. The primary examiner or any member of the Board of Appeals may also issue such subpenas or orders on his own motion, in any proceeding. Such subpenas and orders may issue against the applicant or any person within the jurisdiction of the United States, whether or not he is a party of record.
 (b)(1) The Commissioner shall establish rules for taking such discovery, testimony, and evidence. Such rules shall provide the parties of record all discovery permitted and the sanctions for noncompliance therewith prescribed in the Federal courts pursuant to the Federal Rules of Civil Procedure, as procedural necessities within the Officer permit. * * *
 (2) The Commissioner shall also establish rules governing inter partes proceedings by which subpoenas and orders issued pursuant to subsection (a) of this section may be sustained, quashed, or modified.
 (c)(1) Agency action pursuant to subsections (a) and (b) of that section shall not be deemed final decisions or orders for the purposes of chapter 13 of this title. Judicial review of such order may be had upon review of the final decision or order in the entire proceedings . . .. Judicial review of agency action pursuant to subsections (a) or (b) of this section may also be had in the course of a civil enforcement proceeding. Such proceeding may be by way of application by any party aggrieved by refusal or failure to comply with a subpoena or order issued pursuant to subsections (a) or (b) of this section, to the United States District Court for the District of Columbia, for an order to show cause why the person refusing or failing to comply with such subpoena or order should not be commanded by the court to comply therewith.
 
 
 [29]
 S. 2504, 93d Cong., 1st Sess. 23 (1973):
 
 
 [23]
 Issue of subpoenas and other orders by Board of Examiners-in-Chief; review and enforcement
 (a) Except as otherwise provided in section 135 of this title, any party to a proceeding before the Board of Examiners-in-Chief may apply at any time to any member of the panel for subpoenas or discovery orders to provide testimony, evidence, depositions, or other information, and such members shall issue the same ex parte. Any member of the Board of Examiners-in-Chief may also issue such subpoenas or orders on his own motion, in any proceeding. Subpoenas and orders may issue against the applicant or any person within the jurisdiction of the United States, whether or not he is a party in the proceeding.
 (b)(1) The Commissioner shall establish rules for obtaining such discovery, testimony, evidence, depositions, or other information. Such rules shall provide the parties all discovery permitted, and the sanctions for noncompliance therewith prescribed, in the Federal courts pursuant to the Federal Rules of Civil Procedure, as now in force or as amended hereafter, with such different time limits as the Commissioner may by regulation prescribe. * * *
 (2) The Commissioner shall also establish regulations governing proceedings by which subpoenas and orders issued pursuant to subsection (a) of this section may be sustained, quashed, or modified by the Board of Examiners-in-Chief.
 (c)(1) Agency action pursuant to subsections (a) and (b) of this section shall not be deemed final decisions or orders for the purposes of chapter 13 of this title. Judicial review of orders pursuant to subsections (a) and (b) of this section may be had upon review of the final decision or order in the entire proceeding, . . .. Judicial review of agency action pursuant to subsections (a) or (b) of this section may also be had in the course of a civil enforcement proceeding. Such proceeding may be by way of application by any party aggrieved by refusal or failure to comply with a subpoena or order issued, and not quashed, pursuant to subsections (a) or (b) of this section, to the United States District Court for the District of Columbia, for an order to show cause why the person refusing or failing to comply with such subpoena or order should not be commanded by the court to comply therewith. * * *
 
 
 [30]
 It might be argued that the majority's action here in overturning its own interpretation of a federal statute is similar to the Supreme Court's conduct in Boys Markets v. Local 770, Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). However, there are two significant distinctions between the situation presently before this Court and that in Boys Markets
 First, in Boys Markets Justice Brennan reasoned that the intervening decision in Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), had undermined the Court's previous construction of the interrelationship between the Norris-LaGuardia Act and section 301(a) of the Labor-Management Relations Act. Avco 'has produced an anomalous situation which, in our view, makes urgent the reconsideration of Sinclair. (370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962)) The principal practical effect of Avco and Sinclair taken together is nothing less than to oust state courts of jurisdiction in 301(a) suits where injunctive relief is sought for breach of a no-strike obligation.' 398 U.S. at 244-245, 90 S.Ct. 1583, 1589. Such result, Justice Brennan found, was inconsistent both with the Court's conclusion in Dowd Box, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962)-- that the purpose of section 301(a) was to supplement rather than to encroach upon the pre-existing jurisdiction of the state courts-- and with the doctrine of the 'federal policy of labor law uniformity' 398 U.S. at 245-246, 90 S.Ct. 1583, expressed by the Court in Lucas Flour, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). In contrast, our previous decision in Natta has been reaffirmed, rather than undercut, by our intervening decisions. Compare Mac=Pherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916).
 Second, the Supreme Court concluded that the earlier decision in Sinclair contravened one of the fundamental policies of federal labor law: 'Thus, because Sinclair, in the aftermath of Avco, casts serious doubt upon the effective enforcement of a vital element of stable labor-management relations-- arbitration agreements with their attendant nostrike obligations-- we conclude that Sinclair does not make a viable contribution to federal labor policy.' 398 U.S. at 249, 90 S.Ct. at 1591. Our decision in Natta, on the other hand, does not conflict with any such overriding policy of federal law.
 
 
 [31]
 35 U.S.C. 23 (1954)
 
 
 [32]
 Babcock & Wilcox Co. v. Foster Wheeler Corp., 415 F.2d 777 (3d Cir. 1969)
 
 
 [33]
 35 U.S.C. 146 (1954)
 
 
 [34]
 F.R.Civ.P. 26(b)(1)
 
 
 [35]
 F.R.Civ.P. 26(b)(1)
 
 
 [36]
 See Advisory Committee Notes to the 1970 Amendments to Rule 34
 
 
 [37]
 F.R.Civ.P. 26(b)(3)
 
 
 [38]
 37 C.F.R. 1,56:
 'Improper applications. Any application signed or sworn in blank, or without actual inspection by the applicant, and any application altered or partly filled in after being signed or sworn to, and also any application fraudulently filed or in connection with which any fraud is practiced or attempted on the Patent Office, may be stricken from the files.'
 
 
 [39]
 In Montecatini Edison v. E. I. duPont de Nemours & Co., 434 F.2d 70, 72 (3d Cir. 1970), this Court ruled that on review of discovery orders under section 24, the district court's actions should be tested against the standard of abuse of discretion
 
 
 [40]
 Three factors provide a basis for the district court's decision permitting discovery limited to the issue of fraud in the filing of the application. First, there is serious question whether the materials in question may be obtained through discovery in the Patent Office, because of the strictures imposed on such discovery by Rule 287. Second, the requested discovery, if available in the Patent Office at any time, could not have been obtained under Rule 287 at the time Judge Coolahan permitted such discovery in the district court, since the discovery period in the Patent Office had not commenced. Third, it was possible that such earlier discovery would have led to a measureable advance of the litigation and, conceivably, to its prompt termination
 Two other considerations indicate that in some circumstances the refusal of discovery by the district court might well be warranted first, the inconvenience occasioned by the possibility of discovery conducted simultaneously before two tribunals, and second, the potentially disruptive impact of such proceedings on the methods adopted by the Patent Office for disposition of controversies before it. However, the district court's conclusion that, in this case, the factors favoring a grant of discovery outweigh those suggesting the contrary result is not, in my judgment, so clearly improper as to constitute an abuse of discretion.